Clark et al. vs. Comford et al.

## No. 11,220.

### MARY E. CLARK ET AL. VS. JOHN COMFORD ET AL.

1. An exception to a petition addressed "To the 18th Judicial District Court of the State of Louisiana, holding sessions in and for the parish of Livingston," on the ground that the number of the district was erroneously stated was properly overruled—the mistake was an immaterial clerical error.

2. When a former suit between the parties has been discontinued by the plaintiff after a new trial had been granted him on his application, defendant can not successfully plead *lis pendens* by reason of his having filed in the first suit a reconventional demand for the value of improvements made on a tract of land, and for taxes paid by him when judgment is only asked in his behalf, in the event plaintiff should obtain judgment against him on the question of title to the land. When plaintiff's demand was discontinued, defendant's claim—merely contingently advanced—fell.

3. An agreement whereby "the party of the first part agrees to sell" to the party of the second part a certain tract of land known as the Governor's Bluff tract, in the parish of Livingston, "said to contain 1278 30-100 acres."
   "The party of the second part agreeing to pay to the party of the first part $2 per acre, on terms as follows: Five hundred dollars cash, on the 1st day of September, 1872, and the remainder in two equal payments, payable on the 1st day of May, 1873, and 1st day of May, 1874, with interest at the rate of 8 per cent. per annum from date until paid "— in respect to which agreement the party of the second part pleaded that under the terms thereof "he was to pay $2 per acre for said land, and notarial title was to be given when the title of the party of the first part could be completed;" held to be a promise of sale and not a sale, when the testimony shows that at the time of said agreement the title thereto had not been confirmed by the government, and that under a conviction that the same would soon be confirmed, the party of the second part went into immediate possession of the land by consent—under the obvious understanding that in the interval he should have all the rights of ownership short of ownership itself, but with a liability to pay interest on the purchase price from the date of the agreement.
   The agreement contained the elements upon which both the "thing sold" and the price to be paid might ultimately be fixed, but the number of acres to be purchased was uncertain, dependent upon a subsequent confirmation of the tract and a survey of the same, and the object of the sale being uncertain, the price also was uncertain, being fixed at $2 for each acre.

4. A person who with the consent of the owner of a tract enters into possession of the same under a promise of sale, and on contemplation of the consummation thereof, with the obvious understanding that he was to have all rights of ownership short of ownership itself, but under the obligation to pay interest on the purchase price from the date of the agreement, is not a possessor in bad faith, but his possession is not of such a character as to enable him to acquire the property under the prescription of ten years—he did not enter on the land under a title translative of property and he can not change the character of his possession.

5. A party in an agreement to sell land when his title is completed, who does not allege that he has as yet a confirmation of the land, made a survey, or done any act whatsoever in furtherance of the execution of the agreement, can not ask that the same be set aside until he shall have done so, and the other party

Clark et al. vs. Comford et al.

is in default. In the meantime the parties must remain in the position in which they were originally placed by consent—the proposed purchaser in possession with the qualified right conveyed at the time of entry, but with the obligation to pay interest from date of the agreement and with eventual rights of both left open.

APPEAL from the Sixteenth District Court, Parish of Livingston, Reid, J.

*I. L. Bradford* and *Calhoun Fluker* for Defendants and Appellants.

*Cross & Cross* for Defendants and Appellees.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiffs, as the instituted heirs and universal legatees in various proportions of the late Virginia Wilson Burbridge allege that they are the joint owners and entitled to the possession and enjoyment of a certain tract of land, together with the buildings and improvements thereon, in the parish of Livingston, known as the " Governor's Bluff Tract," and known upon the approved township maps of the United States as *Section 65* in township No. 7 South, of range No. 2 East, *Section No. 45* in township No. 7 South, of range No. 3 East, and *Section No. 50* in township No. 8 South, of range No. 3 East, all aggregating 1278 30-100 acres.

That said tract of land was acquired by Mrs. Virginia Wilson Burbridge, as widow in community and universal legatee of James W. Burbridge.

That under and by virtue of a promise or agreement in writing, signed by J. W. Burbridge and dated the 10th day of April, 1872, to sell and convey the said tract of land to -him on certain terms and conditions, one John Comford in conjunction with one F. Thomas Cockerhan, who pretends to have purchased a portion of said land from Comford, have in bad faith taken possession of said land, and pretend to hold the same as owners, adversely to the title of petitioners, whose rights they deny, refuse to give up possession to them, refuse to allow them to enjoy the said land, and have done so for a number of years without paying but refusing to pay rent for the same, cutting and removing and selling to others the right to cut and remove from the same large quantities of valuable timber

and wood, and in other ways committing acts of trespass and damage to said land and the buildings and fences and other improvements upon the same, all to the great damage and injury of petitioners.

That said John Comford has in no wise or particular ever complied in any way with said promise or agreement to buy said land by paying the purchase price therein mentioned or otherwise complying with any of the terms, conditions or stipulations of the same, all of which is and was well known to said Cockerhan at the date of his said pretended purchase, and that the same should be annulled and set aside.

That notwithstanding the failure of said Comford to comply with the terms and conditions of said agreement he and said Cockerhan continue in bad faith to use the same as a color of title or subterfuge or excuse for their tortious and illegal depredations upon said lands, and as a bar to the payment of yearly rents for their use and occupancy of the same.

That said land is worth the sum of $3 per acre, or the total sum of $3835.90.

That said defendants owe petitioners rent at the rate of $200 per year from the time they shall appear on the trial to have possessed the same, and also the sum of $1000 for cord wood used or sold by them and taken from said land; $2000 for trees and timber cut and removed or destroyed by them or by others with their consent, or either of them, and $750 for staves and pieux and barrel heads also cut and removed from the same by the defendants or by others with their permission. They pray that the said parties be cited and that plaintiffs have judgment against defendants decreeing plaintiffs to be the owners of said lands and entitled to the possession of the same, and annulling and setting aside said agreement of sale, and annulling and setting aside the sale of any portion of said land from Comford to Cockerhan, and for judgment against Comford and Cockerhan *in solido* for the sum of $400 per year rent for each year they have possessed the same and detained it; and for the sums of $1000, $200 and $750 for cord wood, timber, staves, etc., as stated. Defendant filed two exceptions, which were overruled by the court. These exceptions will be referred to more particularly hereafter. On the 12th November, 1891, the defendants were allowed by the court until the first day of the next jury term to file an answer. Before that day arrived Comford died, and his surviving wife, Julia Ryan,

as executrix of his last will and testament, and as sole heir and universal legatee, made herself a party-defendant.

In November, 1892, the defendants answered, first pleading the general issue.

They then alleged that John Comford bought the said tract of land from said Burbridge as per private title annexed and made part of the answer, under which he has been in actual possession ever since the date thereof. That if for any reason the estate of Comford is evicted, they aver that Comford spent in improving property: $3000 in cleaning the channel of Amite river so as to make a public landing at said place; $5000 in clearing, fencing and ditching 200 acres of land; $1200 in erecting a dwelling house and cabins on the same, and $500 paid for taxes, for which he prayed judgment. They pleaded the prescription of ten years to any claim of title, and the prescription of one, three and ten years against claims for timber.

The case went to trial and resulted in a judgment in favor of the defendant and against the plaintiffs, rejecting their demand. From this judgment only one of the plaintiffs, Nathaniel Ewing, has appealed.

The exceptions overruled in the District Court were:

1. That the petition was addressed to the Eighteenth Judicial District Court, which under the Act of 1890 is without jurisdiction over the parish of Livingston.

The petition was addressed to and the proceedings have been carried on in the judicial district of the State of Louisiana in and for the parish of Livingston. The designation of the district as the eighteenth district was an immaterial clerical error.

2. That in the suit of Burbridge vs. Comford in the United States Court, Baton Rouge, on the same cause of action, respondent therein set up a plea in reconvention which is still pending, and issue having been joined on said reconvention and a trial had, plaintiff can not dismiss and seek another jurisdiction without the consent of respondent; wherefore, he pleaded *lis pendens*.

As the *answer* alluded to in this exception has to be considered in determining whether the action of the District Court thereon was correct or not, and as it has also a bearing upon the merits of the case, it is necessary to refer to the suit itself and to copy a portion of the answer.

In December, 1889, the plaintiffs instituted in the Circuit Court of

the United States for the Fifth Circuit and Eastern District of Louisiana a petitory action against John Comford on allegations substantially those of the petition in this suit.

The defendant filed an answer, in which he declared that he bought the tract of land on the 10th day of April, 1872, from J. W. Burbridge, deceased; that a private title was drawn up and witnessed by one Harris, book-keeper of J. W. Burbridge & Co., and by Branch King, Esq., one of the employés of said firm. That under the terms of said sale he was to pay $2 per acre for said land, and notarial title was to be given when the title of said Burbridge could be completed. That said private title was deposited in the safe of said firm of J. W. Burbridge & Co., and he has reason to believe is among the papers of said firm now in possession of plaintiff. That the purchase price was fully paid by him. That on the day of said sale he received from the hands of J. W. Burbridge two instruments in writing annexed and made part of the answer wherein he recognized him to be the owner of said tract of land. That he permitted him to pay the taxes then due by him and the taxes afterward accruing up to his death, and also stood by and saw him making valuable and extensive improvements which he knew respondent would not have put on the place except in the honest belief that he was the owner of said place; and that by virtue of his conduct, active and passive, Burbridge (and his heir and widow in community) is estopped from assailing the title thus recognized in writing and acquiesced in for nearly eighteen years. That said private instruments marked "A" and "B" (last two copied) in themselves constitute a title. That although no price was mentioned therein the existence of an adequate consideration would be shown *aliunde* on the trial of the cause. That he has possessed openly and notoriously as owner from April 10, 1872, under the written title left in the hands of J. W. Burbridge & Co., and the private memorandum of title, and he therefore pleaded the prescription of ten years. Alleging that respondent had put up extensive and valuable improvements and paid taxes, which are detailed, the answer prayed for judgment against the plaintiff for the amount and value thereof in the event he should be evicted.

The case in the United States Court was tried before a jury, which, under a charge from the court, rendered a verdict in favor of defendant. A new trial having been granted on application of plaintiff, she subsequently discontinued the suit.

Clark et al. vs. Comford et al.

Plaintiff then brought the present suit, in which defendants filed, as we have before stated, two exceptions, which were overruled.

The first of these exceptions we have disposed of. The court correctly overruled the second exception. A reference to the answer will show that the claim set up by defendant for improvements and taxes paid by him was only advanced by him contingently so as to meet a possible judgment, adverse to him upon the question of title.

When plaintiff discontinued, the defendant's claim necessarily fell.

Before proceeding to a consideration of the merits we will transcribe the instrument in writing which the parties refer to in their pleadings.

On the 10th of April, 1872, Burbridge and Comford signed the following paper, which being signed, was left in the possession of the former, and there remained until, at. the instance of Comford, produced after the commencement of the litigation between them:

Articles of agreement made in New Orleans on this 10th day of April, 1872, between James W. Burbridge, merchant of New Orleans, of the first part, and John Comford, of New Orleans, of the second part. Witnesseth:

The party of the first part agrees to sell to the party of the second part a certain tract of land known as the Governor's Bluff or Gurley tract (purchased by the party of the first part of T. R. Hutchinson, in the Greensburg district, in township No. 788, now parish of Livington, State of Louisiana, said to contain 1278 30-100 acres).

The party of the second part agreeing to pay to the party of the first part $2 per acre on terms as follows:

Five hundred ($500) dollars cash on the 1st day of September, 1872, and the remainder in two equal payments, payable on the 1st day of May, 1873, and 1st day of May, 1874, with interest at the rate of 8 per cent. per annum from date until paid.

Witnesses: JAMES W. BURBRIDGE.

T. D. HARRIS. JOHN COMFORD.

BRANCH M. KING.

On the same day Burbridge wrote and delivered to Comford two papers to the following effect:

NEW ORLEANS, April 10, 1872.

To any State official of the parish of Livingston, La., who may be legally authorized to dispossess or eject any person who may have squatted or settled on the property of another without authority:

Have this day sold to John Comford a tract of land known as the Governor's Bluff Tract—will have the authority to dispossess or eject any one he may find on the property, as they will be there without authority.

JAMES W. BURBRIDGE.

*Mr. John Comford:*

If you should find it necessary to go to Springfield and remove squatters on the property sold you, you can call on John W. Addison or Daniel T. Setton, who will render such assistance as you may need. New Orleans April 10, 1872.

JAMES W. BURBRIDGE.

We have been greatly embarrassed in reaching a conclusion as to the real relations of the parties to each other and to the property, from their acts and declarations outside of the act of 10th April, 1872. Each party has weakened his own pretensions and strengthened those of his adversary. Independently of the letter addressed to "Any State official of the parish of Livingston," in which Burbridge makes the statement he had that day "sold" the property, and the letter of the same date to Comford, in which he refers to squatters "on the property sold to you"—he in several other letters wrote to Comford of the land as "the land I let you have," and as "your place."

Comford on the other hand wrote several times to Burbridge giving him advice as to his (Burbridge's) renting various parts of the property, warning him against selling a portion of it to a person who he said wanted "to get a soft bargain out of him," and complaining of his having given "a right of way" through his cultivated field. He also in several of these letters referred to the price of the land as unpaid. These various letters are merely facts to be made use of in arriving at a decision upon the character of the agreement of the 10th of April, 1872, for it is upon that act that the rights of the parties depend.

The defendant contends that these three papers evidence a sale fully completed on the 10th of April, 1872. That he became the absolute vendee as of that date, and thereafter simply owed the price of the property, which obligation to pay the price he has fully complied with. That he went immediately into possession of the property, then wild and uncultivated land—cleared, ditched and fenced a large part of it, built a dwelling and cabins upon it at great expense,

Clark et al. vs. Comford et al.

deepened the channel of the Amite river so as to give a public land-
ing at the place, paid the annual taxes and made crops as owner
upon it, which he shipped to Burbridge and which were disposed of
by him as such. That this long continued possession on his part
coupled with the knowledge of Burbridge of his actions and doings
in the premises show unmistakably that Burbridge himself regarded
the act of 10th of April, 1872, as a sale, and that in addition to this,
his repeated admissions of defendant's ownership in various ways
estop and conclude him.

The plaintiffs on the other hand assert that the act of 10th
of April, 1872, was a mere promise of sale; that Comford has
never complied or attempted to comply with it in any manner;. that
he went upon the place and has cultivated it for years without pay-
ing rent; that he has cut and disposed of large quantities of valuable
timber and appropriated the proceeds to his own use and benefit;
that he was a poor man in constant need of money and assistance,
which Burbridge furnished him; that he has acknowledged the
latter's ownership since the act of April 10 in various ways and
acknowledged that he has paid no price for the property. Defendant
further contends that in view of Comford's utter inability to comply
with the provisions of the act of promise of sale, it has been
practically abandoned for years, and that defendant has a right to
have it set aside, and that Comford's possession being in bad faith
she has the right to claim rent from him and to hold him to an ac-
countability for the wood and timber cut and disposed of. The dis-
trict judge held the act of April 10, 1872, to be a sale, and likewise
intimated that he considered the property to have been paid for.
In reaching his conclusions he placed great stress upon the fact that in
the agreement it was stipulated that interest at 8 per cent. should
run from date, which fact he deemed inconsistent with any idea other
than that of ownership in Comford.

We have finally reached the conclusion that the act of 10th of
April, 1872, was not a sale, but a mere promise of sale, which both
parties contemplated with absolute certainty would soon be con-
summated; that the conviction was so fixed that in anticipation of
that fact Burbridge consented to Comford's taking, and Comford's
consenting to take immediate possession and to *acting as* owner, with
all the advantages of ownership, but without actual ownership, in the
interval between the date of the agreement and its consummation;

that it was intended when the sale was really effected that the intervening acts of ownership of Comford should enure to his benefit, to be compensated to Burbridge by the interest on the unpaid price from the date of the agreement.

The agreement on its face is an agreement "to sell," an agreement "to pay," and although nothing is said in the act itself about any act of sale or title to be subsequently passed, Comford's allegation in the suit, in the Baton Rouge suit, that " he was to pay $2 per acre for said land and notarial title was to be given when the title of said Burbridge could be completed," must be read into it, and when so read into the agreement, it places Comford and Burbridge almost into the position of the parties in the case of Broadwell vs. Lane, 34 An., where Lane went into possession under a promise of sale.

If it had not been for this allegation of Comford's, coupled with a statement in a paper found among the papers of Burbridge at his death, to which we have given a very limited effect, we would have been utterly in the dark about the reasons why the act of sale was not at once passed on the 10th of April, 1872. The two together furnish us, as we think, a key to the situation.

In this paper, introduced without inspection, and left apparently as a memorandum of advice for his executor or heir, and dated May 4, 1876, he says: " It will be seen by an article of agreement between John Comford and me, on the 10th day of April, 1862, I sold him a tract of land known as the Governor's Bluff tract, in the parish of Livingston, Louisiana, at two dollars per acre, $500 to be paid in cash before making the deed. Owing to Comford's being unable to make any payment under the agreement, no deed has been made. In the fall of 1875 the court house of Livingston parish was burned, with .all the parish papers and records. The deed to the property being destroyed can be restored by one that is in the hands of R. H. & J. L. Bradford, attorneys at law, who are engaged to get a federal confirmation of title to a part of the tract, say 872 22-100 acres. *   *   *                              "J. W. BURBRIDGE.

" May 4, 1876.

" Four hundred acres of the tract has a confirmation title."

If we now go back to the act of 10th April, 1872, which defendant claims to be an absolute sale, we will find that in one important particular, outside of its phraseology, it bears upon its face a reason for our conclusions that something more was to be done before the

contract as a sale became absolute, and a reason why we are of the opinion that no price has been paid.

*Art. 2456* of the Civil Code says: "The sale is considered to be perfect between the parties and the property is of right acquired to the purchaser with regard to the seller as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered nor the price paid."

*Art. 2464:* "The price of the sale must be certain—that is to say, fixed and determined by the parties."

In the case at bar whilst there are elements upon which both the "thing sold" and the "price to be paid" might ultimately be fixed, yet at the date of the agreement neither the one nor the other was in point of fact certain. Whilst $2 per acre was agreed upon to be paid, yet the number of acres which were to be object of the purchase was uncertain—only ascertainable upon some fact to be afterward established—a survey of the premises and a completion of Burbridge's title by the confirmation of the government.

The "thing sold" being uncertain, the price of the same, being predicated upon the number of acres in the tract, necessarily became uncertain. It was evidently in view of this uncertainty as to object and price that the sale was postponed as to its completion.

We are satisfied that both parties stand to-day *quoad* the title as they stood on the 10th of April, 1872, with an agreement on the part of Burbridge to sell and an agreement on the part of Comford to buy, with the right of possession in Comford, and to act as owner for all practical purposes (short of ownership) until the proposed act of sale shall be passed, but with the obligation on his part to pay interest under the terms of the agreement.

Plaintiffs' contention that defendant under the circumstances is a possessor in bad faith is utterly without foundation. He went into possession in view of the proposed sale. The rights and obligations of both sides were and are such as we have stated.

The plaintiffs have not alleged, still less proved, that they have a completed title to the land—that they have made any survey or in any manner fixed the rights and obligations of both parties as to object and price. They do not aver, still less prove, that they have made any tender of a title such as the defendant had the right to demand and the plaintiffs bound to furnish. They are therefore not in a position to ask the setting aside of the promise to sell.

If defendant's plea of prescription of ten years is intended to be a prescription of ten years *acquirendi causa* it must fail. If she has a title from plaintiff as she claims she must rest upon it, and prescription is not a question in the case; if she has not a title, but rests upon her possession, it has not been of sufficient length to justify any claim of ownership. Comford did not enter into possession under a title translative of ownership, but by indulgence and consent under a mere promise of sale. The defendant could not change the character of the possession by her own act. It has had some advantages; it must also have its disadvantages. We are of the opinion that the judgment of the District Court in so far as it affects the appellant, Nathaniel Ewing, is erroneous, but we are also of the opinion that the judgment can not be changed in his behalf so as to render judgment in his favor, but that the judgment should be reversed as to him, and that there be judgment in favor of the defendant as against the appellant simply of non-suit, leaving all questions open between appellant and defendant which are involved in this litigation.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment of the District Court in so far as it affects the appellant, Nathaniel Ewing, be and the same is hereby annulled, arrested and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the defendants against the plaintiff, Nathaniel Ewing, dismissing his demand as in case of non-suit.

Rehearing refused.