[L. A. No. 2353. In Bank.—March 6, 1909.]

## JAMES CUZNER, Respondent, v. THE CALIFORNIA CLUB (a Corporation), Appellant.

MUNICIPAL CORPORATION—LOS ANGELES—LIQUOR LICENSE—BUSINESS OF SELLING LIQUOR—SOCIAL CLUB EXEMPT.—The provision of the ordinance of January 27, 1908, of the city of Los Angeles, "providing for licensing and regulating the carrying on of certain professions, trades, callings and occupations, carried on within the limits of the city of Los Angeles," which imposes a license-tax upon "every person, firm or corporation conducting, managing or carrying on the business of a retail liquor dealer," should be construed, in view of the general purposes of the ordinance and its particular provisions regarding liquor dealers, as applying only to such persons, etc., as are engaged in the "business of selling liquor," in the sense in which the term business is ordinarily used in that connection, and is not applicable to a *bona fide* social club, which, while it furnishes liquors to its members and their guests, and receives

payment therefor, does so as a mere incident of the sole object of the club of furnishing to its members the conveniences and privileges of a social club.

ID.—PRIOR ORDINANCES OF SIMILAR IMPORT—WANT OF ATTEMPT TO COLLECT LICENSE OF SOCIAL CLUB—INTENT OF CITY COUNCIL.—In determining such to be the proper construction of the ordinance, the court may consider the fact that prior ordinances of substantially similar import existed in the municipality for several years before the enactment of the ordinance in question, and that under such prior ordinances no attempt was made by the municipal authorities to exact the payment of a license-tax by a *bona fide* social club. Such an administrative construction of the prior ordinances is evidence of an intent by the city council in enacting the subsequent ordinance not to impose a license-tax upon such social club.

ID.—REGULATION AND LICENSING TRAFFIC IN LIQUORS BY SOCIAL CLUB—POLICE POWER.—A municipal corporation, in the exercise of the power to regulate traffic in intoxicating liquors that is a part of the police power conferred upon it by the constitution, may enact prohibitory laws applicable not only to those engaged in the business of selling intoxicating liquors to the public, but also to such transactions of a *bona fide* social club, and may regulate, by license-tax or otherwise, any and all kinds of dealings with relation to such liquors, including such dealings of a social club with its members.

ID.—CARRYING ON BUSINESS—TAXATION FOR REVENUE.—Such transactions of a social club with its members are of such a nature that, in the exercise of the power to impose a license-tax for revenue on any business, the municipality may treat them as the carrying on of a business that may be taxed for revenue, and impose a license-tax thereon for that purpose.

ID.—BUSINESS DEFINED—TRANSACTIONS OF SOCIAL CLUB NOT BUSINESS. —The term "business," as used in a law imposing a license-tax on businesses, trades, professions, and callings, ordinarily means a business in the trade or commercial sense, one carried on with a view to profit or livelihood. A *bona fide* social club, if permitted by its articles of incorporation or association, may so engage in business; but in its transactions with its members in the carrying on of its club-house looking simply to the giving to them such privileges in the property devoted to *bona fide* club purposes as they are all, in common, entitled to under the constitution and rules of the club, it is not engaged in business at all in the commercial or trade sense, as ordinarily understood.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. P. James, Judge.

The facts are stated in the opinion of the court.

Gibson, Trask, Dunn & Crutcher, and Edward E. Bacon, for Appellant.

Anderson & Anderson, and Nathan Newby, *Amicus Curiæ,* for Respondent.

Leslie R. Hewitt, City Attorney, Lewis R. Works, Assistant City Attorney, *Amici Curiæ,* for Respondent.

ANGELLOTTI, J.—This action was brought by a member of the California Club, a *bona fide* social organization existing in the city of Los Angeles, to enjoin the selling or serving of liquors by the club to its members and their guests, upon the ground that by making such sales the club is violating the provisions of an ordinance of the city of Los Angeles requiring the payment of a license fee by all persons engaged in the business of retail liquor dealers. The complaint charges that the defendant maintains a bar, at which its members and their guests are served with liquors at retail, and intoxicating liquors are also served to either members or guests at other places in the club, and it is contended by the plaintiff that in so doing the defendant is conducting a place for the sale of liquors within the meaning of said ordinance, and thereby lays itself liable to heavy fines and also to a forfeiture of its charter if it persists in this conduct. A general demurrer to the complaint for want of facts sufficient to constitute a cause of action was overruled and defendant declined to answer. Judgment was thereupon entered for plaintiff, and defendant appeals.

It is assumed by the parties that such an action will lie on behalf of a member of the club. (See *Klein* v. *Livingston Club,* 177 Pa. St. 224, [55 Am. St. Rep. 717, 35 Atl. 606].)

The only question presented by the appeal is whether the provision of an ordinance of the city of Los Angeles "providing for licensing and regulating the carrying on of certain professions, trades, callings and occupations, carried on within the limits of the city of Los Angeles," adopted January 27, 1908, that imposes a license-tax of one hundred dollars per month upon "every person, firm or corporation conducting, managing or carrying on the business of a retail liquor dealer," is applicable to the defendant.

The defendant is a *bona fide* social club, incorporated in December, 1888, under the laws of the state of California, solely "with a view to promote social intercourse among its members," and not for profit, and is without any capital

CLV Cal.—20

stock. Its principal place of business, as stated in its articles of incorporation, is the city of Los Angeles, wherein it maintains a club-house for the use of its members and their guests. In this club-house are maintained all those conveniences for the use of such members and their guests as are ordinarily to be found in a social club-house, such as a library, parlors, and reception rooms adequately furnished, dining rooms where meals are furnished, billiard rooms, and sleeping apartments. It owns its club-house building and the furniture therein, and the land on which the building stands, the aggregate value thereof being in excess of five hundred thousand dollars. During the whole period of its existence it has kept therein a stock of vinous, spirituous, and malt intoxicating liquors in sufficient quantities to supply the wants of its members and their guests, and, "without any license whatever of any kind from the city of Los Angeles so to do," has furnished such members and guests with such quantities thereof as they ordered, receiving therefor from the parties taking the same more than the cost price thereof. The moneys so received by the club are, like the money received for dues, meals, etc., used solely for the maintenance of the club. The permanent membership of the club is limited in number to eight hundred and fifty. No person who is a resident of Los Angeles, not a member of the club, is entitled to any of its privileges, except that he may be introduced once by a member, but when so introduced cannot purchase anything therefrom, and cannot remain in the club-house after the departure therefrom of the member introducing him. Persons not residing within fifty miles of Los Angeles may be introduced to said club by any member and receive a card entitling them to the privileges thereof for a period of not more than thirty days in any period of twelve months. Such persons constitute the guests of whom we have spoken. The member introducing such a visitor is responsible for his conduct and for any indebtedness which he may incur. The whole object of the club is to furnish to its members the conveniences and privileges of a social club, and everything that is done by it in the way of furnishing meals, lodgings, and liquors is merely incidental to this object, just as the furnishing of a library, parlors, and reception rooms, of the advantages of which all members may partake without charge, is incidental

to that object. Whatever profit may be derived by the club from any of the transactions is used and to be used solely for the main object above stated. In the way above stated only does the club engage in any business other than the conduct of a *bona fide* social club.

It must be conceded at the outset that the municipality of Los Angeles in the exercise of the power to regulate traffic in intoxicating liquors that is a part of the police power conferred upon it by the constitution, may enact prohibitory laws applicable not only to those engaged in the business of selling intoxicating liquors to the public, but also to such transactions in regard thereto as we have described above, and that they may regulate, by license-tax or otherwise, any and all kinds of dealings with relation to such liquors, including such dealings as are had by the defendant with its members. It may also be conceded that the transactions above detailed are of such a nature that, in the exercise of the power to impose a license-tax for revenue on any business, etc., the municipality may treat them as the carrying on of a business that may be taxed for revenue, and impose a license-tax thereon for that purpose. This is apparently not disputed by learned counsel for defendant. The sole question then is whether it was the intention of the framers of the law or ordinance to include such clubs.

The ordinance of January 27, 1908, is in all respects material here a re-enactment of an ordinance adopted February 28, 1903, with a substantially similar title,—viz., "An ordinance providing for licensing and regulating the carrying on of certain professions, trades, callings and occupations, carried on within the limits of the city of Los Angeles." It makes it unlawful for any person to carry on "any trade, calling, profession or occupation" specified in the ordinance, without having procured a license to do so. It imposes a license-tax on a great variety of businesses and callings, over eighty in number, generally in terms providing that the tax is imposed on any one "carrying on the business" named. The provisions in regard to the liquor business are as follows:—

"Sec. 49. For every person, firm or corporation conducting, managing or carrying on the business of a retail liquor dealer, $100.00 per month.

"For every person, firm or corporation conducting, managing or carrying on the business of a wholesale liquor dealer, $75.00 per month.

"For every person, firm or corporation carrying on the business of a restaurant or eating place where spirituous, vinous, malt or mixed intoxicating liquors are sold, served or given away in original packages containing not less than one pint, to be consumed on the premises with *bona fide* meals, $75.00 per month in addition to the regular restaurant license required by the ordinances of the city of Los Angeles.

"For the purpose of this ordinance a retail liquor establishment is defined to be any place where spirituous, vinous, malt or mixed intoxicating liquors are sold, served or given away, in quantities of less than five gallons, to be drunk either upon the premises or elsewhere.

"Any person, firm or corporation who, either as owner, agent, lessee or otherwise conducts or carries on a retail liquor establishment, as herein defined, is for the purpose of this ordinance declared to be a retail liquor dealer; provided, however, that none of the definitions herein given shall apply to the sale, serving or giving away in a restaurant or eating place of spirituous, vinous, malt or mixed intoxicating liquors, in original packages, containing not less than one pint, to be consumed on the premises with *bona fide* meals.

"For the purpose of this ordinance, a wholesale liquor establishment is defined to be any place where spirituous, vinous, malt or mixed intoxicating liquors are sold, served or given away in quantities of not less than one fifth of a gallon, and not to be drunk upon the premises where so sold, served or given away; and any person, firm or corporation who, as owner, agent, lessee or otherwise, conducts or carries on a wholesale liquor establishment, as herein defined, is for the purpose of this ordinance declared to be a wholesale liquor dealer.

"For the purposes of this ordinance a restaurant is defined to be a place fully equipped with modern conveniences for cooking and preparing victuals, and where hot meals are actually served at least three times a day, and at least six days in the week; and a *bona fide* meal is defined to be a meal consisting of such quantity and quality of food as is ordinarily served for a meal in hotels or restaurants. Merely sand-

wiches, or lunches, or crackers, or cheese, shall not be held nor considered to be a *bona fide* meal within the provisions of this ordinance."

Reasonably construed, these provisions regarding liquor dealers must be held to have been intended to apply only to such persons, etc., as are engaged in the "business of selling liquor," in the sense in which the term "business" is ordinarily used in that connection. We concede that it was entirely within the power of the city council to define in the ordinance what it meant by the term "business of a retail liquor dealer," upon the "managing or carrying on" of which it imposed the license-tax by the first paragraph of section 49, and to define it in such a way as to include transactions of the character that we have detailed. But we see in the definitions contained in the succeeding paragraphs, no intention to depart from the manifest policy of the whole ordinance, which was to impose a license-tax upon the doing of various kinds of business, or, as put in the title, "upon the carrying on of certain professions, trades, callings, and occupations." The object of the definitions was to distinguish between the different classes of persons engaged in the business of selling liquor, retail liquor dealers, wholesale liquor dealers, and restaurant keepers, as to whom different rates of license-tax were fixed, so as to make it clear and definite in which class any such person falls, and also to guard against evasions by persons really engaged in the business of liquor dealers who might attempt to cloak their transactions as gifts, as for instance by *selling* a cracker and *giving* a drink, a device not unknown in the past, or to obtain the reduced rate of a restaurant keeper under the cloak of a sham restaurant. We think the ordinance clearly shows that these were the sole objects of the definitions, and that the idea of including acts that would not ordinarily be held to be included within the term "managing or carrying on a business," was not present. Taking the provision defining a "retail liquor establishment" by itself, and construing it literally and technically, it would include a man's home, if a man served or gave spirituous, vinous, malt or mixed intoxicating liquors to his guests therein, for such home would then be a place where such liquors were served or given away in quantities of less than five gallons. Admittedly, this provision must be read in con-

nection with the next following provision, which defines a "retail liquor dealer" as one who *"conducts or carries on"* such a place. These words in the connection in which they are used, clearly imply a conducting or carrying on of a place as a business, the conducting or carrying on of a place "where liquors are vended as a business." (*Ex parte Mansfield,* 106 Cal. 405, [39 Pac. 775].) As learned counsel for plaintiff suggests in reply to the claim that any other construction would include a host serving liquors in his own house, the words indicate "a dealing or trafficking in liquors." As we read the various provisions, so far as retail liquor dealers are concerned, they simply impose the tax on the business of selling and disposing of, at a fixed place of business, spirituous, vinous, malt or mixed intoxicating liquors, in less quantities than five gallons, and the words, "sold, served or given away," include only such disposition of liquor as may properly be held to be made in the conducting of a business. This we think to be the fair and reasonable construction of the language used, especially when the whole ordinance is considered together, and we see nothing in the charter provisions or other ordinances of the city that are before us under stipulation of the parties, to indicate otherwise. (See *Ex parte Seube,* 115 Cal. 629, 632, [47 Pac. 596]; *Ex parte Mansfield,* 106 Cal. 404, [39 Pac. 775].)

The question, then, as it appears to us, is whether a *bona fide* social club engaged in transactions of the character hereinbefore detailed, with the sole object, as we look at it, of distributing articles provided for the use of the members in such a way "that there shall not be unequal contributions to the treasury which purchases them" (*Klein* v. *Livingston Club,* 177 Pa. St. 231, [55 Am. St. Rep. 717, 35 Atl. 608]), is to be held to be within the purview of a law or ordinance which simply imposes a license-tax upon the business of selling liquors, and does not contain other provisions that show a clear intent to include them.

Upon this question, we are satisfied that the great weight of authority is in favor of the proposition that they are not so included. The matter is exhaustively discussed by Mr. Black in his valuable work on intoxicating liquors, and he sums up as follows:—

"Upon the whole, therefore, notwithstanding some conflicting rulings, the rational conclusion is that the intent must govern. On the one hand, if the object of the organization is merely to provide the members with a convenient method of obtaining a drink when they desire it, or if the form of membership is no more than a pretense, so that any person, without discrimination, can procure liquor by signing his name in a book or buying a ticket or a chip, thus enabling the proprietor to conduct an illicit traffic, then it falls within the terms of the law. But, on the other hand, if the club is organized and conducted in good faith, with a limited and selected membership, really owning its property in common, and formed for social, literary, artistic, or other purposes, to which the furnishing of liquor to its members would be merely incidental, in the same way and to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered as within either the purpose or letter of the law." (Black on Intoxicating Liquors, sec. 152.)

The term "business" as used in a law imposing a license-tax on businesses, trades, professions, and callings, ordinarily means a business in the trade or commercial sense, one carried on with a view to profit or livelihood. A *bona fide* social club, if permitted by its articles of incorporation or association, may, of course, so engage in business, either by transactions with its members or members of the public, as, for instance, by letting for a consideration rooms not used for the ordinary purposes of the club-house, or by engaging in some outside enterprise for the purpose of realizing profits to be devoted to club purposes, and so far as it does such things even incidentally for the purpose of realizing profit to be devoted solely to club purposes, it would be engaged in business in the commercial sense as fully as any person could be. But in its transactions with its members in the carrying on of the club-house, looking simply to the giving to them such privileges in the property devoted to *bona fide* club purposes as they are all, in common, entitled to under the constitution and rules of the club, it is not engaged in business at all in the commercial or trade sense, as ordinarily understood. Such property is beneficially owned in common by the members in equal shares, and is devoted to their common use. So far as such property can be actually used equally by all the mem-

bers, as in the case of reading-rooms, sitting-rooms, .etc., no special charge is made against any member for such use. All may actually use such things in common. But when, in the exercise of the common privilege, one member appropriates to his exclusive use, food or drink or a room for sleeping purposes, things that cannot be actually used in common by all the members, he pays therefor simply because it is the only fair and equitable way of apportioning the expense of the club among the members. As stated in *Klein* v. *Livingston Club,* 177 Pa. 231, [55 Am. St. Rep. 717, 35 Atl. 608], "the purpose of the whole system is to distribute the advantages, comforts and luxuries of the club among the members, so that there shall not be unequal contributions to the treasury which purchases them."

The following cases fully support the doctrine that transactions of the character here detailed do not bring a *bona fide* social club within the purview of a law or ordinance simply imposing a license-tax upon the business of liquor selling: *Manassas Club* v. *City of Mobile,* 121 Ala. 561, [25 South. 628]; *State* v. *Austin Club,* 89 Tex. 20, [33 S. W. 113]; *Koenig* v. *State,* 33 Tex. Cr. 367, [47 Am. St. Rep. 35, 26 S. W. 835]; *Tennessee Club* v. *Dwyer,* 11 Lea, 452, [47 Am. Rep. 298]; *Piedmont Club* v. *Commonwealth,* 87 Va. 540, [12 S. E. 963]; *Barden* v. *Montana Club,* 10 Mont. 330, [24 Am. St. Rep. 27, 25 Pac. 1042]; *People* v. *Adelphi Club,* 149 N. Y. 5, 15, [52 Am. St. Rep. 700, 43 N. E. 410]; *Klein* v. *Livingston Club,* 177 Pa. St. 224, [55 Am. St. Rep. 717, 35 Atl. 606]; *State* v. *Boston Club,* 45 La. Ann. 505, [12 South. 895]; *Commonwealth* v. *Pomphet,* 137 Mass. 564, [50 Am. Rep. 340]; *State* v. *St. Louis Club,* (Mo.) 125 Mo. 308, [28 S. W. 604, 26 L. R. A. 573]; *State ex rel. Columbia Club* v. *McMaster,* 35 S. C. 1, [28 Am. St. Rep. 826, 14 S. E. 290]; *Graff* v. *Evans,* L. R., 8 Q. B., 373, involving the Grosvenor Club; *Davies* v. *Burnett,* [1902] 1 K. B. 666, involving the North Wolverhampton Workingmen's Club. It is perhaps true, as claimed by learned counsel for plaintiff, that some of these cases proceed upon the theory that such a transaction in no sense constitutes a sale, which theory, we are inclined to believe, is not entirely correct. But as we read most of the cases which it is said approve the doctrine of no sale, the real point decided is that, while such transactions may technically constitute

sales, they do not constitute sales within the meaning of the act under consideration—are not sales of the commercial character contemplated by such act. If we were of the opinion that the ordinance before us should be construed as imposing a tax upon any and all sales as distinguished from such sales as are made in the carrying on of the business of selling liquor in the ordinary sense, it is doubtful whether we could assent to the doctrine of some of the cases that it was not intended to include transactions of the character under consideration. But, as we have said, we do not think that the ordinance before us means this, under any fair and reasonable construction. In some of these cases cited, as in *People* v. *Adelphi Club,* 149 N. Y. 5, [52 Am. St. Rep. 700, 43 N. E. 410], a case where the law apparently imposed a tax on the sale, it is true the court in part based its conclusion upon another provision or provisions, which it thought indicated that sales of this character were not contemplated, but we think that such provisions no more clearly indicated such intent than does the ordinance before us. In *State* v. *Boston Club,* 45 La. Ann. 505, [72 South. 895], which holds that it is not the intention of such an ordinance to require a license of a social club as being in business or in trade, it was also held that by reason of special provisions as to liquor dealing, in some respects analogous to those in the ordinance before us, viewed in the light of the history of legislation in that state upon the subject, such transactions were intended to be included. The same conclusion has been reached by some other courts in cases cited by learned counsel for plaintiff, upon special provisions as to liquor selling which it was held showed such intention. We shall not attempt to analyze or distinguish these cases. The question is one which must be determined upon a construction of the ordinances and laws applicable to Los Angeles, in the light of the history of our own legislation on the subject.

Many of the cases relied on by learned counsel for plaintiff are cases involving the proper construction of prohibitory or local option laws, as applied to transactions of the character under discussion. As said by counsel for defendant, "such laws are not confined, either in terms or in purpose, to the *business* of selling liquors, but extend generally to all dealing therein," and they must be construed from a very different

standpoint. Some of the other cases so cited are those where the alleged club is a mere form adopted for the purpose of cloaking the operations of what was really a retail liquor business. In such cases, the mere form will, of course, be disregarded, and the law held applicable. In other cases, such as *Army and Navy Club* v. *District of Columbia,* 8 App. Cas. (D. C.) 544, and *Kentucky Club* v. *Louisville,* 92 Ky. 309, [17 S. W. 743], there were special provisions in terms as to "clubs," "club-houses," and "club-rooms," which it was thought specially showed the intent to include them. Eliminating these cases, it is true that there still remain cases that are in conflict with our conclusion upon the general proposition involved. Of these, *People* v. *Soule,* 74 Mich. 250, [41 N. W. 908], a practically analogous and well-considered case, is probably the most conspicuous example. It appears to us that the opinion in that case lays too much stress upon the fact that such transactions possess all the elements of legal sales, and apparently regards that fact as determinative of the controversy. We have already referred to *State* v. *Boston Club,* 45 La. Ann. 585, [12 South. 895]. The cases of *Lake Shore Country Club* v. *People,* 228 Ill. 75, [119 Am. St. Rep. 417, 81 N. E. 805], and *State* v. *Essex Club,* 53 N. J. L. 99, [20 Atl. 769], were cases where the tax was apparently imposed upon the sales, but the reasoning of the opinions probably places the cases among those opposed to the view heretofore quoted from Black on Intoxicating Liquors. The same is true of *State* v. *Shumate,* 44 W. Va. 490, [29 S. E. 1001]. The decisions of the federal courts (*United States* v. *Wittig,* 2 Low, 466, [Fed. Cas. No. 16748]; *United States* v. *Alexis Club,* 98 Fed. 725), are based upon a construction of the provisions of the internal revenue law, which for the purposes of that act must probably now be considered as settled for all time, that renders all persons selling liquor liable, whether or not they can properly be regarded as being engaged in the business of selling. It was expressly recognized in both the cases cited that there would be great doubt, if the question was merely whether the club was "dealing" in liquors, or "engaged in the business of selling" within the common meaning of those words. The statute there provided: "Special taxes are imposed as follows: . . . fourth, retail dealers in liquors shall pay twenty-five dollars. Every person who sells or offers for

sale foreign or domestic distilled spirits or wines in less quantities than five gallons at the same time shall be regarded as a retail dealer in liquors." (Rev. Stats., sec. 3244, [U. S. Comp. Stats. 1901, p. 2096].) Section 3242 [U. S. Comp Stats. 1901, p. 2094] provided that "every person who carries on the business of a . . . retail liquor dealer . . . without having paid the special tax as required by law," shall be fined and imprisoned, etc. It will be observed, as stated by counsel for defendant, that while in the ordinance before us the limitation to persons "carrying on the business" is an integral part of the very provision which imposes the tax, in the United States statute, the tax was imposed upon "retail dealers in liquor," and these were in terms defined in such a way, the courts held, as to exclude the idea of carrying on business. The construction given that it included all sales, without regard to whether the person was engaged in the business of selling, in the ordinary sense, is based in part upon the rule declared in the Wittig case, as follows: "This is a revenue law, and the decisions of the supreme court require us to construe it liberally in favor of revenue, to prevent evasions." But, as said before, we shall not attempt to reconcile the cases. A full examination but demonstrates that there is a conflict in the views of the courts upon both the propositions we have discussed,—viz. the proper construction of such an ordinance as the one before us, and assuming the correctness of our construction, the question whether such transactions as we have detailed bring defendant within its operation. We believe our construction of the ordinance to be the only fair and reasonable construction of its various provisions, and upon the proposition that a *bona fide* social club engaged in transactions of the kind above set forth is not engaged in the business of selling liquors within the meaning of an ordinance simply imposing a tax upon such business, we are satisfied that the great weight of authority is in accord with our conclusion.

Upon the question of the proper construction of the ordinance, it may be added that it appears to us to be a material fact in determining the intent of the council in adopting the ordinance of January, 1908, that although substantially similar ordinances have been in force during all of defendant's existence as a club, defendant has never been required to have a license from the city. The brief of *amicus curiæ* in support

of plaintiff's position in fact states that the license ordinances have never been enforced against clubs of this kind, but the record available to us contains no information on this subject except as to defendant. But this fact as to defendant is alleged. As to defendant we have an administrative construction of many years of similar ordinances, in accord with views announced by many courts, upon a question which all must concede was at least debatable, a construction as to which the city council could not be deemed ignorant when it enacted the ordinance before us. If it had been intended by that body in enacting the ordinance of January, 1908, that a license-tax should be imposed on a *bona fide* social club so engaged, it is reasonable to assume that it would have made some change in the law as it previously existed to clearly and unmistakably show that it was intended to include them. (See *People* v. *Adelphia Club,* 149 N. Y. 5, [52 Am. St. Rep. 700, 43 N. E. 410]; *Klein* v. *Livingston Club,* 177 Pa. 22, [55 Am. St. Rep. 717, 35 Atl. 606].)

If it be deemed proper by the city of Los Angeles that *bona fide* social clubs engaged in the transactions of the kind here involved should pay a license-tax, or be in any way subjected to the operation of reasonable regulations relative to the sale or disposition of intoxicating liquor, it will be a very simple matter for it to so provide by the use of language that would clearly show such an intent. While the question is not entirely free from doubt, we do not believe that any such intent is shown by the existing laws of the city.

The judgment is reversed, and the cause remanded, with directions to the lower court to sustain the demurrer of defendant, with leave to plaintiff to amend his complaint if he so desires.

Sloss, J., Melvin, J., and Henshaw, J., concurred.

Mr. Justice Shaw, by reason of being a member of the defendant club, deeming himself disqualified, does not participate herein.

Mr. Justice Lorigan, by reason of sickness, does not participate herein.

BEATTY, C. J., concurring.—I concur in the judgment, but not with that assured conviction of the validity of my conclusion which in a matter so important I should wish to feel. If the cause were to be decided with sole reference to the terms of the ordinance, unaffected by any extrinsic circumstance, it would be impossible for me to say, in view of the admitted facts, that the defendant is not carrying on the business of a retail liquor dealer. The numerous decisions cited by its counsel in support of the opposite view are either distinguishable on what appear to me substantial grounds, or, where strictly in point, rest upon reasoning which, to my mind, is not satisfactory. If we had been called upon, shortly after its adoption, to give a construction to the ordinance of 1903 (of which the existing ordinance is in every material particular a mere re-enactment), I should not have entertained a doubt that the California Club was clearly within its terms.

But it is conceded that during the whole period of five years between the adoption of the ordinance of 1903 and its re-enactment in 1908, no demand was ever made upon the club for the payment of a license-tax, and it seems to be an unavoidable inference from this circumstance that it was the common understanding of the municipal authorities that the course of dealing between the club and its members and guests was not the carrying on of the business of retailing liquors. It was, in other words, a contemporaneous construction of the ordinance by those who enacted it, and the fact that it was re-enacted in the same terms seems to justify the conclusion that the intention of its framers was that it should have no wider operation than that to which it had been so long restricted.