Jim MORRIS, et al. *v.* TORCH CLUB, INC. et al.
Intervenors, Steve Clark, et al.

87-135                                    749 S.W.2d 319

Supreme Court of Arkansas
Opinion delivered May 9, 1988
[Rehearing denied June 20, 1988.*]

*Purtle, Dudley, and Hays, JJ., not participating.

462

*Frank Lady*, for appellants.

*Friday Eldredge & Clark*, by: *William M. Griffin III*, for appellee Red Apple Country Club.

*Donald R. Bennett*, for appellee Alcoholic Beverage Control Division.

*Ike Allen Laws, P.A.; James B. Blair; Hal Kemp; Bob Keeter; William M. Griffin III; Ponder & Jarboe; Huey & Vittitow; Mark Stodola; Marshall Carlisle*; and *Rose Law Firm, A Professional Association*, by: *Herbert C. Rule III*, for appellees and intervenors.

*Steve Clark*, Att'y Gen., by: *Jeffrey A. Bell*, Deputy Att'y Gen., for intervenor *Steve Clark*, Att'y Gen.

HUGH R. KINCAID, Special Justice. This case is before the court again, following reversal and remand in *Morris* v. *Torch Club, Inc.*, 278 Ark. 285, 645 S.W.2d 938 (1983). The appellants, as citizens and taxpayers of a dry county, seek a determination by declaratory judgment that Section 10 of Act 132 of 1969 (Ark. Stat. Ann. § 48-1410 (Repl. 1977)), which regulates the serving of alcoholic beverages in private clubs in "dry" counties, is invalid on the theory that it in effect unconstitutionally amended an Initiated Act (Ark. Stat. Ann. § 48-803 (Repl. 1977)) prohibiting the sale of liquor in a dry county, without receiving the requisite two-thirds legislative vote required by Ark. Const. amend. 7. The majority of the court in our previous remand felt that evidence should be taken as to the true meaning and practical effect of the private club statute in order to determine "whether the statute, as interpreted pursuant to the legislature's directive, is in practice an amendment of the Initiated Act."

The trial court has now taken evidence in accordance with our remand, and has concluded that neither Act 132 of 1969 (Ark. Stat. Ann. § 48-1410), nor the regulations adopted thereunder by the Alcoholic Beverage Control Board, operate in violation of or amendment to Initiated Act No. 1 of 1942 (Ark. Stat. Ann. § 48-803), except for Arkansas Beverage Control Regulation 5.45 (formerly ABC Reg. 5.50[a]), which the trial court found to be in violation of the legislative intent of Act 132 of

1969.[1]

Appellants now seek to reverse the decision of the trial court.

Appellants contend that the trial court erred in finding that Act 132 of 1969 did not amend Initiated Act No. 1 of 1942, as it relates to dry counties and dry subdivisions. As we understand the thrust of appellants' argument, it is basically that a comparison of the two Acts on their face requires the conclusion that activities regulated and permitted under Act 132 are prohibited under the Initiated Act No. 1, and that therefore Act 132 is an unconstitutional attempt to amend Act 1, since the passage of Act 132 did not involve the necessary two-thirds vote required by Ark. Const. amend. 7 to amend an initiated act.[2] We believe that our prior decision is dispositive of that issue, for we there recognized at page 939:

It is possible that private clubs may operate within the law, for the Initiated Act does not prohibit the possession or consumption of intoxicating liquor in a dry county.

* * *

We are merely seeking to determine whether the Alcohol Beverage Control Board, by the issuance of private club permits, is giving the appearance of legality to establishments that are not *within the permissible scope of the 1969 statute.* [Emphasis added.]

Thus, our previous holding in this case, recognized that Act 132 of 1969 did not by its own terms violate Initiated Act 1 of 1942. Were it otherwise, there would have been no point in remanding to the trial court to take evidence on the operable effect of the Act — we should merely have reversed in favor of appellants. We reaffirm that holding here. The Initiated Act does

---

[1] The offending regulation (ABC Reg. 5.45) permitted persons to be automatically admitted to a private club as guests or special members merely by virtue of their registration at a hotel or motel or being a patron in a restaurant located on the same premises as a private club.

[2] This constitutional argument may now be moot, since the pertinent section of Act 132 was reenacted into law as a part of the Arkansas Code Annotated of 1987 (§ 3-9-221), by Act 267 of 1987. However, since the mootness issue has not been previously raised, we proceed to address the case on the merits.

not prohibit possession or consumption of alcoholic beverages, nor does it prohibit sharing in the possession or consumption of alcoholic beverages, as one would do with a guest or family member. A reasonable concomitant of the privilege of possession and consumption is, it seems to us, the privilege to share with others in that possession or consumption, whether such occurs in one's home with one's spouse or some other family member, or in one's private club.

The Initiated Act provides in part, "It shall be unlawful for any person, firm or corporation, to manufacture, sell, barter, loan or give away intoxicating liquor" in a dry county. The Act does not define the terms so used. The Act by Section 6 is made cumulative to the existing liquor laws, but neither does the predecessor statute, Act 108 of 1935, the Thorn Act, define such terms. However, appellants argue that when one provides a mixed drink at a private club for a guest, this amounts to a "gift" and is therefore prohibited by the Initiated Act. If this be true, then it is equally true that if one provides a mixed drink in the privacy of one's home to a family member or a guest, this too is a "gift" in violation of the Act.

■ We cannot accept this strained interpretation of the Initiated Act. First, contrary to our customs and traditions,[3] it would relegate the relationship of the host and his or her guest or family member to that of donor and donee. We have not been cited to any precedents compelling the conclusion that a host who shares food or drink with a guest or family member is thereby making a "gift" in the legal sense of the word.

Secondly, we believe that such a construction is inconsistent with the intent of the Initiated Act. The obvious intent of the Act was to prohibit sale of liquor in a commercial sense in a dry county, in whatever guise it might be attempted, be it sale, barter, loan or gift.[4] As such, the Act should be strictly enforced

---

[3] Where words are not defined by the statute, Section 7 of the Thorn Act refers us to the "custom and usage of the people of Arkansas" for definition.

[4] Section 3 of Initiated Act No. 1 specifically provides:

It shall be unlawful for any person, firm or corporation to manufacture, sell, barter, loan or give away intoxicating liquor in any county, township, municipality, ward or precinct *in which the manufacture or sale of intoxicating liquor is or*

consistent with the expressed will of the voters in passing the Initiated Act. However, it makes no effort to regulate possession or consumption which is what we believe is involved when one shares intoxicating liquor with a member of his or her family or with a guest, whether in the privacy of one's home or in one's private club.

■ Equally unavailing is appellants' argument, that when a club member orders a drink for himself or his guest at the member's private club, there is a sale, because the member is assessed for the expense of replenishing the club's stock of liquor for the drink so obtained by the member or his guest. We do not view such as a "sale" within the meaning and intent of the Initiated Act. The member is merely partaking of or sharing with his guest that which he as a member of the club and owner in common of the alcoholic beverage is entitled to possess. We have previously recognized the differentiation between a "sale" of intoxicating liquor and the dispensing of alcoholic beverages by private clubs to their members and guests. See *Faull* v. *Heath*, 259 Ark. 145, 532 S.W.2d 164 (1976). Moreover, it has long been recognized that one or more persons may purchase alcoholic beverages through an agent acting in their behalf, and that such is not a "sale" by the agent. *Whitmore* v. *State*, 72 Ark. 14, 77 S.W. 598 (1903); *see Hunter* v. *State*, 60 Ark. 312, 30 S.W. 42, 44 (1895). (The court specifically noted the example of an employee of a club purchasing for the members, resulting in common ownership). Hence, when the member is assessed to replenish that which he and his guest have lawfully consumed, and the club acting as his agent utilizes the funds so assessed to replenish the stock of liquor, there is not a sale.

■ Appellants argue that it is impossible for private clubs to operate under the "pool" or "revolving fund" system prescribed by Act 132 of 1969 without violating Initiated Act No. 1. The circuit judge below, sitting without a jury, found otherwise on the basis of the evidence, and from examination of the record we cannot say that his finding is unsupported by substantial

---

*shall be prohibited under the provisions of this Act* . . . . (Ark. Stat. Ann. § 48-803). [Emphasis added.]
The commercial thrust of the statute is clearly suggested by the italicized language.

evidence or contrary to law. As will be seen from our preceding discussion, Initiated Act No. 1 did not by its own terms attempt to regulate the possession and consumption of alcoholic beverages by a person or his guest either in the privacy of a person's home or in his or her private club. There was therefore a long history, both pre-dating and post-dating Initiated Act No. 1, of relatively unregulated possession and consumption in private clubs. To be sure, there had been abuses. *See Fraternal Order of Eagles* v. *State*, 246 Ark. 568, 439 S.W.2d 36 (1969). It was into this regulatory void that the Legislature moved to establish a comprehensive regulatory scheme for private clubs by enacting Act 132. In doing so, the Legislature expressly reaffirmed the policy of the state for strict enforcement of Initiated Act No. 1 (Ark. Stat. Ann. § 48-1401 (Repl. 1977)) and expressly provided that no private club shall sell alcoholic beverages by the package or drink (§ 48-1410(a)(2)).

■ Section 10 of Act 132 provides that the preparation and serving of alcoholic beverages in a private club, "furnished or drawn from private stocks thereof belonging to such members, individually or in common under a so-called 'locker', 'pool', or 'revolving fund' system and . . . replenished only at the expense of such members", shall not be deemed a sale or in violation of the law. Ark. Stat. Ann. § 48-1410(a). Section 2(j) of Act 132 establishes strict requirements for a private club to operate under section 10: a club must be non-profit, in existence one year before applying for permit, have at least 100 members regularly paying annual dues of $5.00, and conduct some common "recreational, social, patriotic, political, national, benevolent, athletic or other non-profit object or purpose other than the consumption of alcoholic beverages." (Ark. Stat. Ann. § 48-1402(j) (Repl. 1977)) The only charges to a member, authorized by the Act, are for preparation, mixing and serving the drink, and for replenishment of the stock. § 48-1410(a). Section 10 provides for the issuance of private club permits and for promulgation of Rules and Regulations by the Arkansas Beverage Control Board. Except for ABC Reg. 5.45, which the trial court has invalidated, these regulations mirror the statute, and further require at least 100 voting members, a membership committee comprised of at least three voting members, approval of a new member by at least three membership committee members, maintenance of mem-

bership books, and require a guest to be introduced to the club by a host who is a bona fide member. (ABC Reg. §§ 5.19-5.22, 5.30). The record supports the conclusion that the statute and regulations are interpreted and enforced by the Beverage Control Board as written. The fact that some clubs may violate the statute and regulations is a matter for law enforcement agencies, but does not render the statute or regulations invalid.

■ We do not agree that to operate under the "pool" or "revolving fund" system is to violate Initiated Act No. 1. It is no more than a method for joint private acquisition through an agent, in common ownership and consumption, long recognized as a permissible legal relationship under Arkansas law (*e.g., Whitmore*, 72 Ark. 14, 77 S.W. 598, and *see Hunter*, 60 Ark. 312, 30 S.W. 43, 44), and a relationship not reached by the provisions of Initiated Act No. 1. Appellants cite cases from other jurisdictions in support of their contention. *See e.g., State* v. *Livingston*, 159 Fla. 63, 30 So.2d 740 (1947). However, it appears to us that the better reasoned cases, probably representing the majority rule, are to the contrary. Typical of these cases is *Tri-State Hotel* v. *Linderholm*, 195 Kan. 748, 408 P.2d 877 (1965), where consumption by members in a private club under a liquor pool arrangement similar to that authorized by Act 132 was attacked as a "sale" in violation of a constitutional provision; the club or its agent purchased the liquor for use by the club members. The Kansas Court upheld the power of the Legislature "to define what is not a sale," ruling that the club acted as agent and bailee for the benefit of the member in procuring the liquor, and that therefore no "sale" of alcoholic liquor occurred when served from the club's liquor pool at the member's order or directive. *Id.* at 885-886. Similarly, *see Moriarty* v. *State*, 122 Tenn. 440, 124 S.W. 1016 (1909) (social club dispensing intoxicants to its members, where liquors were held in common, was not a sale); *State* v. *Mountain City Club*, 136 Tenn. 102, 188 S.W. 579 (1916) (dispensing liquor to members and guests, a method of distribution of common property among members of a social club, held not a sale); *Cuzner* v. *California Club*, 155 Cal. 303, 100 P. 868 (1909) (a non-profit social club where liquor was owned in common by members — not a sale when liquor served to members and guests and member was charged therefor). *See also, City and County of Denver* v. *Protocrats*, 136 Colo. 384, 318 P.2d 600 (1957).

Appellants argue that in any event when a new member pays his membership fee and joins the club, he is either sold or given alcoholic beverages owned in common by the other club members. However, we do not view such as either a sale or gift to him of intoxicating liquor, just as it cannot be reasonably said that there is a sale or gift to him of the furniture of the club or the paper towels in the restroom. He merely acquires a membership in the club which affords him the privilege of using and enjoying its facilities and the privilege to possess and consume intoxicating liquors which through the "locker," "pool" or "revolving fund" system the club members own in common, subject to the obligation on the member's part to be assessed for the cost to replenish that consumed. When he is assessed and pays the assessments, and the funds are used by the club or its manager acting as agent of the members to purchase and replenish the stock of liquors, he acquires in common ownership in the liquor so purchased.

For the reason stated we conclude that Act 132 does not either expressly, by implication or by operable effect, amend or violate Initiated Act No. 1 of 1942.

Appellants contend that the lower court erred in denying appellants' motion to pursue the case as a class action. Our decision on the other points raised by this appeal makes it unnecessary to reach this question.

Finally, appellants contend that the lower court committed error in allowing the appellee clubs to introduce into evidence the balance of their Answers to Interrogatories and Requests for Admissions. The court received this evidence upon motions by the respective appellees, after appellants had first offered portions of these answers into evidence. Our rules of evidence provide, "Whenever a writing or recorded statement or part thereof is introduced in evidence by a party, an adverse party may request him at the time to introduce any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it." A.R.E. Rule 106. Answers to Interrogatories "may be used to the extent permitted by the Rules of Evidence." ARCP Rule 33(b) and *see* ARCP Rule 32(a)(4). It is not suggested that the balance of the answers contained information that was irrelevant or which in fairness

ought not to have been considered along with the portions of the answers offered by appellants. The admission of the balance of the answers was therefore proper under these rules. Moreover, it is clear from the record that the information contained in the answers was already before the lower court; the trial judge, hearing the case without a jury, had reviewed the answers extensively in order to rule on numerous motions during the course of pre-trial discovery. Finally, appellants point to no prejudice to them from the admission of this evidence.

Tom B. Smith, Special Justice, joins.

AFFIRMED.

Dudley, Hays and Purtle, JJ., not participating.

Holt, C.J. and Hickman, J., and James V. Spencer III, Special Justice, dissent.

Darrell Hickman, Justice, dissenting. The question which is finally before us is whether private clubs, which dispense intoxicating liquor in dry counties, violate Initiated Act I of 1942 which prohibits the "manufacture, sale, barter, loan or giving away" of any intoxicating liquor in dry counties. In 1969 the Arkansas legislature passed Act 132 which provided that private clubs which dispense intoxicating liquors to its members from a "locker pool" or revolving fund "shall not be deemed to be . . . [selling] or be in violation of any law of this state prohibiting the manufacture, sale, barter, loan or giving away of intoxicating liquor . . . ." Act 132 was not passed by a two/thirds vote which is required to change an initiated act.

In *Morris v. Torch Club*, 278 Ark. 285, 645 S.W.2d 938 (1983), we remanded this case to the trial court to hear evidence and determine what the facts were regarding private clubs in dry counties; what, indeed, was the practice in the various types of private clubs regarding the common ownership of intoxicating liquors, how the members paid for their drinks and what was the practice regarding guests. The majority has read our decision to be an abandonment of any intention to enforce Initiated Act I of 1942.

The majority tries to finesse the tough question and that is what about the liquor dispensed by these clubs to guests, who are

either given a drink or pay for it. Such a practice clearly violates the law, and it is a general practice in all the clubs. Every time a guest is served, the law is violated. The majority has no answer to this question except to say it cannot read the law that way, while it does read that way.

There is no doubt private clubs can exist, and possession and consumption of intoxicating liquors are not prohibited, but sales are. While it might be impractical to have a private club whose members can drink their own liquor, it can be done. It is just not done. The facts are that all the clubs violate the law in letter and in spirit. The so-called revolving fund is a charade. The clubs sell their "members" drinks. So what we have are a multitude of clubs that exist that sell intoxicating liquor in violation of Initiated Act I.

I notice the majority does not discuss the trial court's ruling regarding those private clubs that may be "joined" simply by registration at a motel or hotel. The judgment reads:

> The court further finds that it is contrary to the legislative intent expressed in Act 312 of 1969 for persons to be automatically admitted to a private club as guests or special members pursuant to ABC Reg. 5.50(a) (now numbered ABC Reg. 5.45), merely by virtue of their registration at a hotel or (2R 910) motel or being a patron in a restaurant located on the same premises as a private club. Such violations as may exist should be prosecuted by local authorities.

The trial court correctly ruled this arrangement is a phony way to circumvent the law. We are affirming this decision. Actually, there is no difference between this practice and allowing a person to join a service club or veteran's club for $15.00 which simply operates a beer joint.

The country clubs and other more exclusive clubs have other reasons to exist than to serve intoxicating liquor, but they will not cease the practice of serving liquor in violation of the law so long as convoluted regulations and laws condone that practice. New clubs will no doubt join the existing clubs. It seems the ABC board promotes the creation of private clubs in dry counties. It was their regulation which spawned many of the phony clubs run

by hotels and motels. It would be best to simply follow Initiated Act I of 1942. If counties want to permit liquor sales, they can; if not, they would remain dry - not partly dry. The hypocrisy of the present system can only erode respect for the law and the agencies that are charged with enforcement.

I would reverse the trial judge and hold that, on the facts developed, Initiated Act I is being violated by private clubs.

HOLT, C.J., and Special Justice J. V. SPENCER III, join the dissent.