**DEERING v. BLAIR, Commissioner of Internal Revenue (two cases).**

Court of Appeals of District of Columbia.
Submitted December 8, 1927. Decided January 3, 1928.

Nos. 4590, 4591.

1. Internal revenue ⬅7(19)—Resident of city, devoting most of time to financial affairs there, held not to operate stock farm as "business," within income tax statute as to deduction for loss (Revenue Act 1918, § 214, subd. [a], par. 4 [Comp. St. § 6336⅛g]; Revenue Act 1921, § 214, subd. [a], par. 4 [Comp. St. § 6336⅛g]).

One residing in New York, occupied with various financial affairs there during much, if not most, of his time, but interested in hackney horses, *held* not to have maintained and operated stock farm in Rhode Island as "business," within Revenue Act 1918, § 214, subd. (a), par. 4 (Comp. St. § 6336⅛g), and corresponding provisions of Revenue Act 1921, § 214, subd. (a), par. 4 (Comp. St. § 6336⅛g), authorizing deductions from taxable income for loss incurred in business, in view of operation at loss over long period; "business" being that which occupies time, attention, and labor of man for purpose of livelihood or profit, though it need not be sole occupation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Business.]

2. Internal revenue ⬅7(19)—For occupation to be "business," authorizing deduction of loss from taxable income, it must be pursued for livelihood or profit (Revenue Act 1918, § 214, subd. [a], par. 4 [Comp. St. § 6336⅛g]; Revenue Act 1921, § 214, subd. [a], par. 4 [Comp. St. § 6336⅛g]).

Under Revenue Act 1918, § 214, subd. (a), par. 4 (Comp. St. § 6336⅛g), and corresponding provisions of Revenue Act 1921, § 214, subd. (a), par. 4 (Comp. St. § 6336⅛g), authorizing deduction from taxable income for loss in business, occupation, or employment, will not be excluded from classification of "business" mere-

ly because it results in loss, but it is essential that livelihood or profit be at least one of purposes for which employment is pursued, and this applies to farming as well as to other employments.

Appeal from the Board of Tax Appeals.

Deductions by Reginald C. Vanderbilt from net income for tax purposes were disallowed by David H. Blair, Commissioner of Internal Revenue. The Board of Tax Appeals affirmed the action of the Commissioner, and James R. Deering, executor of the estate of Reginald C. Vanderbilt, deceased, appeals. Affirmed.

J. H. Covington and Spencer Gordon, both of Washington, D. C., for appellant.

L. L. Hight and S. S. Faulkner, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. This is an appeal from an order of the Board of Tax Appeals, finding certain deficiencies in the income taxes of Reginald C. Vanderbilt, now deceased, for the taxable years 1919, 1920, and 1921. It appears that when Mr. Vanderbilt computed his net income during those years for tax purposes he deducted certain sums from his gross income because of losses alleged to have been incurred by him while operating a stock farm as a business during that time.

[1] This claim was based upon section 214 (a) (4) of the Revenue Act of 1918 (40 Stat. 1057, 1066, 1067 [Comp. St. § 6336⅛g]), and the corresponding provisions of the Revenue Act of 1921 (42 Stat. 227, 239, 240 [Comp. St. § 6336⅛g]), which provide that, in computing net income for taxable purposes, the taxpayer may deduct from his gross income "losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business." The deductions thus made by Mr. Vanderbilt were disallowed by the Commissioner of Internal Revenue, whose action was affirmed by the Board of Tax Appeals. The board found that Mr. Vanderbilt had in fact owned and operated a stock farm during the years in question, and that he had expended thereon large sums of money in excess of the income from the farm; but the board held that he had not conducted the farm as a business, and therefore that the losses were not allowable as deductions. The sole question at present, therefore, is whether Mr. Vander-

bilt, in the years 1919, 1920, and 1921, maintained and operated his stock farm as a "business." If so, the deductions were lawful; if not, they were unlawful and were rightly disallowed.

[2] "Business" is defined to be that which occupies the time, attention, and labor of men for the purpose of livelihood or profit. It is not necessary that this should be the sole occupation or employment of the party. Bouv. Law Dict. 406 "Business"; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. An occupation or employment will not be excluded from the classification of business merely because it actually results in loss instead of profit; but it is essential that livelihood or profit be at least one of the purposes for which the employment is pursued, in order to bring it within the accepted definition of the word, and this applies to farming as well as other employments. Plant v. Walsh (D. C.) 280 F. 722; Thacher v. Lowe (D. C.) 288 F. 994.

It appears that Mr. Vanderbilt resided in New York, and was occupied much if not most of his time with various financial affairs in that city; that he took an interest in hackney horses, and in improving that breed of horses; that about the year 1906 he acquired the farm in question, consisting of 235 acres located near Portsmouth, R. I., and that he owned and operated it up to the time of his death which occurred in the year 1925; that there were 13 buildings upon the farm, including a large residence for Mr. Vanderbilt, which, however, was not occupied in 1919, 1920, or 1921, also a "winter cottage," where Mr. Vanderbilt stayed at times, and various other cottages, some of which were for servants, and other buildings; that there was also a large coach stable, with an illuminated top, called a landmark, with a training and show ring in an inclosed and covered building, which was 250 feet long, the peak of the roof being 106 feet in height. A part of the land was used for crops, and cows and chickens were kept; but the farm was used chiefly as a stock farm for the breeding of hackney horses, and during the years in question about 20 mares and 3 stallions of this stock were kept there. The latter were used for service at hire, and this feature was advertised in stock journals and, otherwise. About 12 employees were employed upon the place. The expenses of operating the farm in the year 1919 amounted to $27,260.81, while the total gross income from it amount-

ed to $2,285.53, of which $1,579.26 was derived from the sale of vegetables, etc., and only $706.27 from breeding and boarding fees. Nothing was realized from the sale of horses. The record for the years 1920 and 1921 shows similar losses; it also appears that the farm had regularly shown large losses during the prior years of its operation.

The board states in its decision that, "in such conditions, the operating losses must have extinguished the original invested capital before 1918, and, had the farm been operated for business purposes by any one relying on the receipts therefrom for livelihood or income, it would probably have been sold by the sheriff long before the beginning of the taxable years here in question." In view of this apparently unbroken record, extending from the beginning to the close of Mr. Vanderbilt's operation of the farm, we think the board was justified in the conclusion that the farm was operated as a place of pleasure, exhibition, and social diversion, and not as a business for profit. Such a conclusion follows the reasoning of Judge Learned Hand in Thacher v. Lowe, supra, reading in part as follows:

"I have no doubt that a lawyer can operate a farm for profit. However unlikely it may be that he will succeed in the enterprise, the enterprise may in fact be intended as a business. But it is equally clear that a lawyer may run a farm merely as an adjunct to his country place, and between the two the test appears to me to be only of his actual intention. Moreover, in ascertaining that intention, I can see no escape from making the crux of the determination his receipts and expenditures. * * * It does seem to me that, if a man does not expect to make any gain or profit out of the management of the farm, it cannot be said to be a business for profit, and while I should be the last to say that the making of a profit was not in itself a pleasure, I hope I should also be one of those to agree there were other pleasures than making a profit. Indeed, it makes no difference whether a man is engaged in a business which gives him pleasure, if it be a business; that is irrelevant, as was said in Wilson v. Eisner. But it does make a difference whether the occupation which gives him pleasure can honestly be said to be carried on for profit. Unless you can find that element it is not within the statute. * * *"

Conformably with these views, we affirm the decision appealed from.