## WHITNEY v. COMMISSIONER OF INTERNAL REVENUE.
### No. 5323.

Circuit Court of Appeals, Third Circuit.
Oct. 3, 1934.

590

Frederic E. Mygatt, Jr., of New York City, for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before DAVIS, Circuit Judge, and CLARK and JOHNSON, District Judges.

DAVIS, Circuit Judge.

This petition for review involves a deficiency in income taxes for the year 1927. The questions here are whether or not the petitioner may deduct from his gross income certain dues and contributions paid, as a member, to the New York Stock Exchange and losses sustained in operating a racing stable.

During 1927, the petitioner was a partner in the brokerage firm of Richard Whitney & Co. He and two other partners were members of the New York Stock Exchange. The rules of the Exchange required individuals to own seats, but permitted an individual to assign his seat to his firm for its use. This was done by the petitioner and his partners and, under the partnership agreement, the firm paid all the dues and assessments on the seats owned by the firm members.

In 1927, Richard Whitney & Co. paid a total of $1,981.86 to the Exchange on behalf of the three seats held by its members. Of this amount $1,019.83 was the proportion charged to the petitioner by the partnership under the agreement that all charges of the Exchange on members' seats should be paid by the partnership. It should be noted that this sum charged to the petitioner does not represent the dues and assessments on the seat owned by him, but the share chargeable to him in proportion to his interest in the firm. That is so for the reason that members of partnerships are assessed for income tax on their distributive shares of the net income of the partnership. Section 218, Revenue Act 1926 (26 USCA § 959).

From the record it appears that the Stock Exchange charged the petitioner a total of $970 for his seat in 1927. That amount represents $800 for dues and $170 for contributions to the Gratuity Fund of the Exchange.

The constitution of the Stock Exchange requires each member to pay dues, not to exceed $1,000 annually, to be used for current expenses or capital investment as determined by the Governing Committee of the Exchange or to be subject to suspension or expulsion. The record shows that the books of the Exchange treated the dues paid by the petitioner as capital contributions.

The constitution of the Exchange provides that each member shall contribute $10 to the family of a deceased member. That is called the Gratuity Fund. During 1927, the petitioner was required to make payments of $170 to the fund, but his bills from the Exchange showed a credit in the fund of $79.67 for some reason not appearing, and he therefore made net payments on this account of only $90.33.

The Commissioner and the Board of Tax Appeals held the petitioner accountable in his return for the sum of $1,019.83. The record is not entirely clear, but so far as we understand it, the petitioner's seat was assessed $800 for dues and $170 for contributions to the Gratuity Fund.

The petitioner contends that he is entitled to a deduction of $1,019.83 for ordinary and necessary expenses paid during the taxable year in carrying on his trade or business as a broker, "including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title." Section 214 (a) (1), Revenue Act 1926, 26 USCA § 955 (a) (1).

The sum of $1,019.83, which the petitioner claims as a deduction, represents the proportion chargeable to him of the payments made in 1927 by the partnership for the seats assigned to it by the partners. The petitioner, himself, was obligated to the Exchange in 1927 for his own seat for a total of $970, of which $800 was allocated to his seat and $170 to the Gratuity Fund. The difference between the sum charged to him by the partnership and the total of his obligations to the Exchange is $49.83. He is entitled to deduct this difference from his gross income as an ordinary and necessary expense of carrying on business for 1927.

But the charges against his membership of $970 stand in a different light. The membership was not partnership property. It belonged to the petitioner and was merely used by the partnership.

The petitioner contends that it is immaterial as to what the Stock Exchange does with the dues under section 214 (a) (1), which provides that:

"Sec. 214. (a) In computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * * *"

He says that the government has erroneously read a qualification into this section to the effect that expenses required to be paid as a condition to the continued use of property are not deductible *if the recipient makes a gift or invests any of the payments.*

It is true that the statute is concerned only with the nature of the payments made by the taxpayer and not how the person who receives the payment may choose to use it. The question here is whether or not the several items which total the sum of $970, charged to the petitioner, were ordinary and necessary expenses incurred in carrying on business.

■ Obviously, the owner of a seat on the Stock Exchange must pay dues and charges. The payments are necessary. But that is not enough. A capital investment may be necessary in carrying on a business. Section 215 (26 USCA § 956) provides that no deductions shall be allowed for "any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." The expense of business must also be ordinary. That is, it must be a usual or customary expenditure in the course of business during the year. Duffy v. Central Railroad Co. of New Jersey, 268 U. S. 55, 45 S. Ct. 429, 69 L. Ed. 846; Welch v. Helvering, 290 U. S. 111, 54 S. Ct. 8, 78 L. Ed. 212.

■ The New York Stock Exchange is an association. When the petitioner purchased his seat on the Exchange he made a capital investment. He acquired an interest in the assets of the Exchange as well as the right of trading. The record shows that the dues paid by members were treated in 1927 as capital improvements squarely within the meaning of section 215, which prohibits deductions in such cases.

■ But in the case of the payments to the Gratuity Fund, a different situation confronts the court. These payments by reason of the petitioner's membership in the Exchange amounted to $170 for 1927. The record shows items amounting to $79.67 were credited against the total of $170, but the petitioner has failed to show the reason for this credit. The balance of $91.33 may be deducted as an expense of carrying on business. These payments were for the benefit of the families of deceased members of the Stock Exchange and were required by its constitution.

The petitioner also contends that he is entitled to a deduction for 1927 from his gross income of $10,326.40 incurred in operating a racing stable.

The issue here is a question of fact: Whether or not the racing stable was operated as a business, or a transaction entered into for profit, though not connected with a trade or business. The Board determined that the losses incurred in operating the stables were personal expenses and that the petitioner's primary motive in carrying on the stables was for the pleasure gained from a hobby.

The petitioner has operated a racing stable since 1918. There is no information as to the amount of his investment, but his operating expenses generally appear to have increased each year. The evidence shows clearly that the stable was run on a business basis. The petitioner kept books, records, and accounts. He employed trainers, jockeys, and other necessary assistants, and he, himself, supervised and directed the stable, actively and continuously. He has used various methods and experimented considerably to improve his stable. The petitioner has maintained the stable apart, and as a separate business, from his several other enterprises. It is true that the expenses of the stable have exceeded the revenue which is principally derived from prizes, stakes, and the proceeds from sales of horses; but the petitioner testified that he intended and hoped to derive profits from the operation of the stable.

■■ There is no question that a number of racing stables are made as much of a business as the operation of a mercantile establishment and profits are realized thereby. There could be merit in the government's argument, if the facts warranted the conclusion, that racing is the sport of the wealthy, and that the maintenance of a stable is not a business expense but a personal expense. The question is not a philosophical one, but a practical one and involves the determination of whether the petitioner's stable was operated as a business or for pleasure. The Board and this court, in reviewing the order of redetermination, are confined to the facts set out in the record. The burden of proof was on the petitioner before the Board, and if he met it, the burden shifted and the government was required to come forward with evidence to refute the evidence of the petitioner. It did not do so and the Board cannot draw inferences and conclusions from facts or suppositions outside of the record.

The decision of the Board that the petitioner was not conducting a business was

based on the facts that he had not claimed deductions for the losses prior to 1927; that the operation of the stable has not shown a profit from 1918, the year in which it was established; and the assertion that the pleasure in owning a stable was the primary interest of the petitioner.

That the petitioner did not claim a deduction for losses prior to 1927 and that the stable was unprofitable for the eight years it had existed will not support the decision of the Board under the evidence in this case. There is no substantial evidence to support the conclusion that the pleasure of owning the stable was the primary interest of the petitioner in operating it. The evidence in this case is so similar to that in the case of Commissioner v. Widener, 33 F. (2d) 833 (C. C. A. 3), that it is controlling here.

The order of redetermination is modified in accordance with this opinion.