**Lynn R. BRODRICK, Director of Internal Revenue for the District of Kansas, Appellant,**

v.

**A. L. DERBY and Ida E. Derby, Appellees.**

No. 5225.

United States Court of Appeals Tenth Circuit.

July 11, 1956.

Rehearing Denied Aug. 3, 1956.

**36**

C. Guy Tadlock, Washington, D. C. (Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Fred E. Youngman, Attys., Dept. of Justice, Washington, D. C., and William C. Farmer, U. S. Atty., Topeka, Kan., on the brief), for appellant.

Verne M. Laing, Wichita, Kan. (Lester L. Morris, Fred E. Evans, Jr., and Ralph R. Brock, Wichita, Kan., on the brief), for appellees.

Before BRATTON, Chief Judge, PHILLIPS, Circuit Judge, and ROGERS, District Judge.

BRATTON, Chief Judge.

This was an action instituted by A. L. Derby and his wife, Ida E. Derby, against Lynn R. Brodrick, Collector of Internal Revenue for the District of Kansas, to recover amounts paid as additional income taxes together with interest thereon for the taxable years 1948 and 1949. In their joint income tax returns for such years, A. L. Derby and Ida E. Derby claimed deductions from gross income for losses sustained in connection with certain harness horse raising and racing operations. The Commissioner of Internal Revenue disallowed the deductions and imposed resulting deficiency assessments. The assessments were paid, claims for refund were submitted and denied, and this suit followed. The cause was tried to a jury. Each party seasonably moved for a directed verdict. The motions were denied and the cause was submitted to the jury. The jury was unable to reach a verdict and was discharged. Within ten days after the discharge of the jury, each party moved for judgment in accordance with the motion for a directed verdict. The court sustained the motion of plaintiffs; judgment was entered accordingly; and the defendant, then Director of Internal Revenue for the District of Kansas, appealed. For convenience, continued reference will be made to A. L. Derby as the taxpayer; and since Ida E. Derby was joined as a party plaintiff merely because joint tax returns of husband and wife were filed for the years involved, no further reference will be made to her.

 Section 23(e) of the Internal Revenue Code of 1939, 26 U.S.C. 1952 ed. § 23(e), authorizes a deduction from gross income of an individual for losses sustained and not compensated for by insurance or otherwise, if incurred in a trade or business, or if incurred in a transaction entered into for profit, though not connected with the trade or business. In order for losses sustained in an operation consisting of raising and racing harness horses to be deductible under the statute, the operation must be carried on for profit as distinguished from mere pleasure in the nature of a hobby. Thacher v. Lowe, 288 F. 994; Deering v. Blair, 57 App.D.C. 367, 23

F.2d 975; Farish v. Commissioner, 5 Cir., 103 F.2d 63. And whether such an enterprise is carried on as a trade or business or merely for pleasure in the nature of a hobby is a question of fact depending in large part upon the intention of the taxpayer. Farish v. Commissioner, supra.

 Rule of Civil Procedure 50(b), 28 U.S.C.A., provides in presently pertinent part that where a verdict was not returned by the jury, a party who had moved for a directed verdict in his favor may within ten days after the discharge of the jury move for judgment in accordance with his motion for a directed verdict. The rule does not have the effect of narrowing or restricting the exclusive province of the jury to determine questions of fact. A motion under the rule can be granted only where the moving party was entitled to a directed verdict. If there were contested issues of fact appropriate for submission to the jury, it is error to grant a motion for judgment under the rule. Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945. And while sometimes difficult of application, the general rules for determining whether a verdict should be directed are well established. On motion for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed; and viewing the evidence and the inferences fairly to be drawn therefrom in that manner, it is the province and duty of the court to direct a verdict where the evidence is without dispute or is conflicting but of such conclusive nature that if a verdict were returned for the party against whom the motion is directed the exercise of sound judicial discretion would require that it be set aside, but where the evidence and the inferences fairly to be drawn therefrom are of such character that reasonable minded persons in the exercise of fair and impartial judgment may reach different conclusions in respect to the crucial issue or issues, the motion should be denied and the issue or issues submitted to the jury. Franks v. Groendyke Transport, Inc., 10 Cir., 229 F.2d 731.

 With these general rules in mind, we come to the pivotal question whether the granting of the post trial motion for judgment in favor of plaintiffs constituted error. And the determination of that question turns upon whether the facts and circumstances established at the trial, considered in their totality and viewed in the light most favorable to the Government, presented an issue of fact for the jury. Stated sketchily, there was evidence which tended to establish these facts and circumstances. For many years, the taxpayer resided in Wichita, Kansas. From 1891 to 1944, he was engaged in the oil business. He started as a roustabout, became a pumper and tool dresser, became a drilling contractor, and became active in producing and refining crude oil. He organized an oil company, served as president of the corporation for about 19 years, ceased to be its president in 1939, and continued as a director and chairman of the board until 1944 when he retired. He was also interested in two drilling companies. In 1946, he disposed of his interests in the drilling companies but continued as an investor in oil and gas leases which were operated and managed by others. In 1948, he owned an interest in 32 producing leases; and in 1949, he owned an interest in 35 leases. His income tax returns for the years 1921 to 1949, inclusive, disclosed a total net income of approximately $1,300,000, exclusive of losses sustained from harness horse raising and racing operations. In 1948, his gross income from sales of oil and gas was $207,369.91; his net income before depletion was $97,842.73; and his net income after depletion was $50,659.15. And in 1949, his gross income from sales of oil and gas was $238,720.15; his net income before depletion was $142,576.84; and his net income after depletion was $85,381.05. In 1917, the taxpayer acquired a harness race horse; and ever since that time he has owned one or more harness race horses.

Beginning sometime in the 1920's, he engaged in the breeding and raising of harness horses. But until he retired from active participation in the oil business, he devoted very little time to the harness horse racing enterprise. In the early years of his harness horse enterprise, he operated on a relatively small basis. The tendency of the operation during the years was to increase in scope. In 1948, the taxpayer acquired a farm location near Wichita and thereafter used it in connection with the breeding and raising of harness horses. In 1948 and 1949, he owned approximately 15 trotters and pacers. In 1944, one of his horses won the Hambletonian race which is regarded as the Kentucky Derby of harness horse racing. He selected the horses to buy, determined the price he would pay for them, selected the horses to be sold, and determined the price at which they would be sold. He placed horses with trainers. Some were trained in California, some in Kentucky, some in South Carolina. The taxpayer determined what race meets and what races his horses should enter. He was a member of the United States Trotting Association, and kept current in respect to harness horse racing developments. He kept books and records of his harness horse operations, and such books and records disclosed losses from year to year. During the period from 1921 to 1949, he lost every year and the losses aggregated $332,262.60. During the years 1941, 1942, and 1943, his capital investment in horses and equipment ranged from approximately $12,000 to approximately $20,000; and his losses exceeded $25,000. In 1944, 1945, 1946, and 1947, his capital investment in horses and equipment was $31,428.03, $30,745.62, $49,860.12 and $53,941.20, respectively; and his losses were $3,496.28, $29,899.06, $25,414.72, and $37,757.02, respectively. In 1948 and 1949, his capital investment in horses and equipment was $35,375.20, and $13,000, respectively, while his losses were $52,556.78, and $34,176.99, respectively. And these substantial losses were borne by the taxpayer out of income derived from other investments. Instead of withdrawing from the harness horse operation which consistently failed to produce any profit but from year to year developed repeated losses substantial in amount, the taxpayer continued with no significant change in method or technique of operation. He testified that although he sustained losses, he expected to recoup them out of future racing operations. He explained certain accidents, injuries, and adverse developments among his horses, and he indicated the hope that like adversities might be avoided in the future. He testified categorically that he conducted the operation for profit. But his testimony was not conclusive in respect to his intention. It was open to be overborne by the facts and circumstances developed at the trial indicating otherwise. Farish v. Commissioner, supra. We are persuaded that when all of the evidence is brought into sharp focus and subjected to critical analysis, reasonable minded persons could draw therefrom different conclusions in respect to whether the taxpayer conducted his harness horse raising and racing operations as a trade or business for profit or for pleasure in the nature of the hobby. And since there was basis in the evidence for reasonable minded persons to reach different conclusions in respect to that crucial question, it was error to grant the motion for judgment in favor of the taxpayer.

The judgment is reversed and the cause is remanded.

PHILLIPS, Circuit Judge (dissenting).

In Nicholas v. Davis, 10 Cir., 204 F.2d 200, at page 202, we said:

"When controlling, positive, and uncontradicted evidence is introduced, and when it is unimpeached by cross-examination or otherwise, is not inherently improper [improbable], and no circumstance reflected on the record casts doubt on its verity, then under the principles laid down in Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 215–220, 51

S.Ct. 453, 75 L.Ed. 983, it may not be disregarded, even though adduced from interested witnesses, and no question of credibility or issue of fact is presented for determination by the jury."

Derby was actively engaged in the oil business from 1906 to 1946. He organized the Derby Oil Company about 1920 and served as its president until 1939. In the latter year he resigned as president, but continued to serve without salary as the director and chairman of its board until 1944. He was also interested in three other companies, which engaged in the development and operation of oil properties. In 1946, he sold all of his interests in the Derby and other companies. Since that time he has not been actively engaged in the oil business, except as an investor.

Mr. Derby has owned, bred and raced harness horses since about 1917. While he was active in the oil business he devoted little of his personal time to the horse racing business. After his retirement about 1944, he began to devote a substantial part of his time to the breeding and racing of harness horses, greatly expanded that business, and actively managed and directed it.

He testified unequivocally that he was engaged in the breeding and racing of harness horses for profit in the tax years in question. He introduced evidence of many facts and circumstances fully substantiating that statement. Much of that evidence came from witnesses other than Derby.

The only countervailing evidence came from the cross-examination of Derby's witnesses and Derby's income tax returns for the years 1921 to 1949, inclusive, showing a continued history of losses by Derby in the harness horse racing business. However, Derby introduced evidence showing that he probably would have made a profit for the tax years in question, but for fortuitous circumstances, such as accidents and injuries to his horses. He had reasonable expectation of winning races in the tax years in question, from which he would have realized profits from purses, which would not only have showed a profit from the years in question, but would have wiped out much of his prior losses.

I am of the opinion that Derby established by controlling, positive and uncontradicted evidence, which was unimpeached by cross-examination or otherwise, and which was not inherently improbable, that he engaged in the breeding and racing of harness horses for a profit in the tax years in question.

The conclusion I have reached finds strong support in the closely analogous case of Wilson v. Eisner, 2 Cir., 282 F. 38. See also Whitney v. Commissioner, 3 Cir., 73 F.2d 589 and Commissioner of Internal Revenue v. Widener, 3 Cir., 33 F.2d 833.

For the reasons indicated, I would affirm the judgment below.