**ALLSTATE INSURANCE COMPANY,
Appellant,**

**v.**

**Charles H. ZELLARS and Humble Pipe
Line Company, Appellees.**

**No. 6077.**

Court of Civil Appeals of Texas,
El Paso.

March 11, 1970.

Rehearing Denied April 8, 1970.

McMahon, Smart, Sprain, Wilson & Camp, Marvin Sprain, Richard E. Tulk, Abilene, for appellant.

Shafer, Gilliland, Davis, Bunton & McCollum, W. O. Shafer, Ray Stoker, Jr., Odessa, Charles L. Price, Houston, for appellees; Dillard Baker, Charles E. Shaver, Houston, of counsel.

## OPINION

WARD, Justice.

The appellee Charles H. Zellars instituted this declaratory judgment action against his insurer, Allstate Insurance Company, to determine his coverage on a family automobile liability insurance policy, and seeking a declarations that Allstate is obligated to defend and indemnify him from loss in a suit pending in Taylor County. The Taylor County suit is styled, "Bama Company vs. Charles H. Zellars and Humble Pipe Line Company", and grew out of Zellars' operation of a motor vehicle owned by the Humble Pipe Line Company. In the present suit Allstate also brought in Humble Pipe Line Company as a third party defendant seeking a declaration that said third party was obligated to defend the Taylor County suit and to pay any judgment that might be entered there against Zellars by virtue of Humble Pipe Line Company's status as a self-insurer under Article 6701h, Vernon's Ann. Texas Civil Statutes. Trial was to a jury, and at the close of the evidence the trial court granted an instructed verdict in favor of the third-party defendant, Humble Pipe Line Company. On jury issues favorable to Charles H. Zellars, judgment was entered against Allstate, affording the insured full coverage under the policy as to his defense in the Taylor County suit and indemnifying the said insured against any judgment that might be there rendered against him in accordance with the provisions of the policy. Allstate has perfected this appeal.

The first part of the controversy between Allstate and its insured, Zellars, concerns the interpretation of the non-owned automobile provision of the policy and whether or not the insured was engaged in a business or occupation at the time of the accident within the meaning of an exclusion clause of the policy.

The basic insuring clause of the policy is as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

\*  \*  \*  \*  \*  \*

"B. Injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage'; arising out of the \* \* \* use of \* \* \* non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, \* \* \*"

The 158J amendatory endorsement to the policy provides, under Part I, that the following are insured:

"(b) with respect to a non-owned automobile,

(1) the named insured \* \* \* provided the actual use \* \* \* thereof is with the permission of the owner; \* \* \*"

The policy defines "non-owned" automobile in these terms:

" 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured \* \* \*"

The amendatory endorsement provides an exclusion applicable to the above coverage which states:

"This policy does not apply under Part I to a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in * * * (2) Any * * * business or occupation of the insured, but this exclusion 2 does not apply to a private passenger automobile operated * * * by the named insured."

The undisputed facts of the case are that Zellars, a swamper for Humble Pipe Line Company, was working under Henry Saffell, a truck driver for Humble, and they were ordered to drive on an out-of-town trip by their employer. These employees of Humble, on overnight trips, were paid by the hour until they stopped for the night and also were later reimbursed for the expense of their lodging and meals while on these trips. The two men drove a 2 and ½ ton tractor with a flatbed trailer attached, from Odessa to Abilene, where they unloaded some equipment. They then drove to Childress, where they spent the night. The next morning they secured another load of equipment and proceeded in their duties to drive the equipment to Houston. At approximately 6:30 P.M. they arrived in Abilene and checked into the Colonial Inn Motel. Mr. Zellars then took a nap until about 8:30 or 9:00 P.M., and when he awoke he discovered that Mr. Saffell had already eaten. Zellars then asked Saffell if he could use the truck to go and eat and was given permission to do so. He unhooked the trailer and was going to eat at a cafe on Highway 36, just outside of Abilene, as he did not like the food at the Colonial Inn, which was open when Zellars left. As he proceeded, he saw the American Legion Hall, stopped there, and played Bingo with an old friend until midnight. Thereafter, he went to his friend's house in the Humble truck and remained there until about 1:30 A.M. He then left his friend's house and proceeded out to the cafe, and on the way suffered a sneezing

attack and collided with the truck owned by the Bama Company. Zellars remembers nothing of the accident. Thereafter, the Bama Company filed suit against Zellars and Humble Pipe Line Company for property damages to the truck with which Zellars collided, and it is out of that accident and suit that the present declaratory judgment suit was filed.

The dispute as to the interpretation of the policy arises from the manner of submission of a definition which was given by the trial court in connection with its Special Issue No. 2, which inquired of the jury as to whether Mr. Zellars was using the Humble Pipe Line Company truck in his business or occupation at the time of the accident in Abilene. The complained-of instruction given by the court in connection with this issue was as follows:

"You are instructed that by the term 'using the Humble truck in his business or occupation' is meant that the act was in the course and scope of Zellars' employment for Humble. For an act to be in the course and scope of the servant's employment, it is necessary that (1) it be done within the scope of the general authority of the servant, (2) in the furtherance of the master's business, and (3) for the accomplishment of the object for which the servant is employed."

The jury, in answer to the issue, replied that Zellars was not using the Humble truck in his business or occupation at the time of the accident. The appellant objected to the submission of the definition for the reasons that the definition had the effect of changing and re-writing the exclusion provision of the policy and was so restrictive as to dictate to the jury that it answer the issue favorably to Zellars.

It is the appellant's contention that the plain language of the exclusion required only that the person using the non-owned vehicle be operating it while he is performing an act arising from or required by his occupation, as opposed to a purely personal act; that the definition went beyond this

to require that the use of the non-owned automobile must be within the course and scope of employment under such circumstances that the insured's employer would be liable along with the insured under the common law principles of respondeat superior.

The appellant's objection to the definition, while difficult to assess, seems to be that the intention of the exclusion has no reference to requiring him to be in the scope and course of his employment of his employer, but that the exclusion was merely intended to apply if he were using the vehicle on the occasion in question while he was engaged in his business or occupation; that under the fact situation here presented, the employer knew he would be away from home and would have to eat in order to sustain himself and that under this situation the exclusion included acts of a personal nature reasonably necessary to life, health and safety of the employee.

Only the case of Globe Indemnity Company of New York, N.Y. v. Jett, 367 S.W. 2d 396 (Tex.Civ.App., Austin 1963, wr. ref. n. r. e.) has construed the "use in business or occupation" exclusion in Texas, and it was there held that the terms as used in the exclusion do not include a secondary activity in the nature of a hobby. The construction of the exclusion clause "business or occupation" from the non-owned automobile coverage has been annotated in 85 A.L.R.2d 502, and particularly in the Later Case Series of 85 A.L.R.2d at page 29. Most of the cases on the subject deal not only with the hobby situation, but with situations concerning additional part-time employment, going to and from the regular employment, or temporary military service. There are many distinguishing features in these cases, such as differently worded exclusion clauses, additional provisions in the policies, questions of fact, and the local law of the particular state. However, nowhere have we found a case where the insured has been so far removed from his employment as was Zellars in the case at hand where the insurer has

seriously argued that he was in his "business or occupation". True, Zellars was on a trip for his employer, but it had terminated some six hours before, and to hold Zellars was "using the Humble truck in his business or occupation" at 1:30 in the morning under the facts in this case would possibly be going even farther than called for under our liberal construction of the Texas Workman's Compensation Act.

As stated in the Jett case, supra:

"'The test for interpreting a contract of insurance is the meaning a reasonable person in the position of the insured would give to its terms. * * * The words "business" and "occupation" may have various meanings under particular circumstances but in general they are each commonly used in reference to the work in which one is regularly or usually engaged * * * "One's business * * * is the activity upon which he spends the major portion of his time and out of which he makes his living."'"

\*       \*       \*       \*       \*       \*

"The general rule in Texas as stated in 32 Tex.Jur.2d, p. 558, Insurance, Sec. 361 is 'The words "occupation" and "business" mean principal business, pursuit, or calling as distinguished from acts incidentally connected with the lives of men in any and all occupations.'"

\*       \*       \*       \*       \*       \*

"In Deering v. Blair, 57 App.D.C. 367, 23 F.2d 975, * * * business was defined as 'that which occupies the time, attention, and labor of men for the purpose of livelihood or profit,'"

A case construing question of whether farm laborers were "engaged in the employment" when injured is that of Southern Farm Bureau Casualty Ins. Co. v. Bohls, 304 S.W.2d 534 (Tex.Civ.App., Austin 1957, wr. ref. n. r. e.). The court there held that farm laborers being transported back to town by their employer after the day's labor were not engaged in their employment; and points out the obvious distinctions between the rules for construing

insurance policies on the one hand, and the rules on the other hand for construing our Workmen's Compensation Act. That court quotes Passmore Metal & Roofing Co. v. New Amsterdam Cas. Co., 10 Cir., 147 F.2d 536, as follows:

> " 'At the time of the accident Little was not engaged in any work and was not performing any service for Passmore and he was not receiving any pay for his time. He was simply riding from the place of work to Passmore's shop in a conveyance gratuitously furnished by Passmore. * * *

> \* \* \* \* \* \*

> " 'Moreover, the exclusion clause "engaged in the business, * * * of the insured" differs materially from the clause "arising out of and in the course of his employment." [from the Workmen's Compensation Act] The word "engaged" connotes action. In Barnett v. Merchants' Life Ins. Co., supra [87 Okl. 42, 208 P. 271, 272], the court, in construing a clause in the policy "shall engage in military or naval service in time of war," held that the word "engage" denotes action and that it means to take part in by performing some duty.

> " 'In Head v. New York Life Ins. Co., 10 Cir., 43 F.2d 517, 520, this court said: "Engage," is defined in volume 3 of Words and Phrases Third Series, at [14 A. page 188], as follows: " 'Engage' means to take part in or be employed in, however the employment may arise;" and at page [196] as follows: "To 'engage' is to embark in a business; to take a part; to employ or involve one's self; to devote attention and effort."

> " 'No doubt, under certain particular factual situations there would be no doubt that the employee either was or was not engaged in the business of his employer. But, in a borderline case, such as is here presented, we think the rule of strict construction of the exclusion clause has legitimate application. * * * ' "

Following the reasoning in the Bohls case, supra, we see no valid distinction being made between "engaged in the employment" in the Bohls case, and "engaged in any business or occupation of the insured" in the case before us.

Commercial Standard Insurance Company v. Sanders, 326 S.W.2d 298 (Tex.Civ. App., Waco 1959, wr. dis'm.) had before it the interpretation of the exclusion clause of the non-owned automobile "arising out of its use by the insured in the automobile business". The insured, after having been on a purely personal mission, had the accident while returning the employer's car in order that it would be available for sale or demonstration. In finding that the insured was not using the car in the automobile business, the court concluded that its connection with the business was incidental, casual and remote and was simply an incident to the personal use.

Other cases supporting Zellars' position are Taylor v. State Farm Mutual Automobile Ins. Co., 171 So.2d 816 (La.App.1965); Pennsylvania Thresher. & F. Mut. Cas. Ins. Co. v. Carter, 197 Va. 776, 91 S.E.2d 429 (1956); Hartford Accident & Indemnity Co. v. Larges, 232 Cal.App.2d 631, 43 Cal.Rptr. 44 (1965).

▮ Zellars was employed as a swamper and not a truck driver, and the truck driver was Zellars' boss, and before it could be said that Zellars was using the truck in his business or occupation, it would seem logical to say that he must also be in the course and scope of his employment at the time of the accident. Under the undisputed facts of this case, we feel that the definition was substantially correct. Mitchell v. Ellis, 374 S.W.2d 333 (Tex.Civ.App., Ft. Worth, 1963, wr. ref.).

▮ The appellant's requested Special Issue No. 1 and the accompanying instruction attempts to adopt our law of Workmen's Compensation as stated in Shelton v. Standard Insurance Company, 389 S.W. 2d 290 (Tex.1965), and is clearly erroneous.

The appellant's requested Special Issue No. 2 contained the following instruction:

"By the term 'while he was engaged in his occupation' as used in this charge, is meant acts of every kind and character having to do with and originating in the work, business or trades of the employer, done by an employee while engaged in or about the furtherance of the affairs of the business of the employer, whether upon the employer's premises or elsewhere, and which act is done for the accomplishment of the object for which he is employed."

This definition requires that the act (going to eat), (1) originates in the employer's business, (2) be done in the furtherance of the affairs of the business of the employer, and (3) be done for the accomplishment of the object for which he is employed. This seems merely a different phase or shade of the definition actually included in the court's charge, which is at least substantially correct under the facts before the court.

■ Regardless of the correctness of the court's definition, the undisputed facts before us would compel a finding that Zellars was not using the truck in his business or occupation at the time of the accident under either definition, and no harm resulted to the appellant. El Paso Times, Inc. v. Trexler, 447 S.W.2d 403 (Tex.1969). The appellant's first five points are overruled.

The next point which we shall consider is the more serious one relating to the court's action in holding that Zellars is entitled to protection by way of indemnity under the policy for injury to or destruction of property in the sum of $10,000.00. The Coverage B, "Property Damage Liability" contains a limit of liability in the amount of $5,000.00, while the potential property damage liability arising out of the Taylor County suit by the Bama Company is in the amount of $6,257.10. The issue, then, is whether the limit of liability

for non-owned vehicle coverage should be increased to $10,000.00, two times the stated policy limit, because the policy insured two vehicles owned by Mr. Zellars, a Chevrolet on which for the property damage liability he paid a premium of $29.00, and a Corvair on which for the property damage liability he paid a premium of $17.00.

The conditions of the policy apply to all parts of the policy unless noted. Paragraph 4 of the conditions applies to Parts 1, 2 and 4 of the policy and is as follows:

\*　　\*　　\*　　\*　　\*　　\*

"4. Two or More Automobiles
When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, \* \* \*"

The liability protection provisions are contained in Part I of the policy and state:

"Coverage B-Property Damage Liability

"Coverage B—Property Damage Liability To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of \* \* \* injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage'; arising out of the \* \* \* use of \* \* any non-owned automobile \* \* \*"

The limits of liability under Part I state:

"The limit of property damage liability stated in the declarations as applicable to 'each occurrence' is the total limit of the company's liability for all damages arising out of injury to or destruction of all property of one or more persons or organizations, including the loss of use thereof, as the result of any one occurrence."

The renewal certificate on the Chevrolet under "Coverages, Limits of Liability and Premiums" contains the following:

"The insurance afforded by this Renewal Certificate is only with respect to such of the following coverages as are indi-

cated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| "COVERAGE | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|
| B. PROPERTY DAMAGE LIABILITY | Each Occurrence $5,000 | $29.00 |

The renewal certificate on the Corvair is on a separate page and is identical to the renewal certificate on the Chevrolet except that the premium for the $5,000 property damage liability is $17.00.

Multiple coverage, "pyramiding" or "stacking" of the limits have been allowed under the medical pay coverage provisions of the automobile liability policy when an insured is injured while driving a non-owned automobile. Southwestern Fire and Casualty Company v. Atkins, 346 S.W.2d 892 (Tex.Civ.App., Houston 1961, no writ); Harlow v. Southern Farm Bureau Casualty Ins. Co., 439 S.W.2d 365 (Tex.Civ.App., Austin 1969, wr. ref. n. r. e.). This is the general rule in the United States. See the Annotation in 21 A.L.R.3d 900. The arguments advanced for "stacking" in those cases vary, but may be summarized as the following: (1) The courts find that the terms of the policy are ambiguous or in conflict and apply the general rule that insurance contracts are to be strictly construed against the insurer so as to provide the maximum coverage to the insured. (2) The single policy covering more than one automobile has been interpreted as being, in effect, two insurance contracts, the courts finding language in the policy so saying, together with the fact that a separate premium charge was made for two or more automobiles. (3) Under the terms of the policy involved, it was impossible to relate the coverage to a particular automobile, and therefore the limits of liability were to be applied separately to each vehicle so as to provide an aggregate coverage equaling the sum of the limits for each.

A search by this court and by the appellant for cases dealing with "stacking" of the liability limits shows only the following: Allstate Insurance Company v. Mole, 414 F.2d 204 (5th Cir. Fla.1969); Polland v. Allstate Insurance Company, 25 A.D.2d 16, 266 N.Y.S.2d 286 (1966); Greer v. Associated Indemnity Corporation, 371 F.2d 29 (5th Cir. Fla.1967); Pacific Indemnity Co. v. Thompson, 56 Wash.2d 715, 355 P.2d 12 (1960); Government Employees Insurance Company v. Lally, 327 F.2d 568 (4th Cir. Maryland, 1963). All prohibit stacking of the liability limits, some of the cases making the distinction between the medical payment provisions on the one hand, as being closely akin to a personal accident policy with recovery being completely independent of liability on the part of the insured, and on the other hand, the public liability or property damage insurance, a tort claim being attributable to the vehicle causing the damage. This distinction is pointed out in the Atkins case, supra. Only the Polland and Mole cases involve coverage where the accident was caused by the use of the non-owned automobile, the other cases being where one of the automobiles named in the policies was involved, and are not in point. The Mole case, in attempting to follow Florida law, distinguishes between the medical and uninsured motorist coverage and states that the medical coverage, though purchased with insurance on a particular car, was payable whether the insured was injured in that vehicle or some other; that because the insurance was derived from the coverage on a particular vehicle, this had the effect of multiplying the stated policy

limit for each vehicle by the number of owned vehicles covered by the policy. Then, as regards the liability provision, the court stated:

"In the instant case an entirely different situation obtains. Non-owned vehicle coverage by definition cannot be derived from the coverage on a particular owned vehicle. It is separate insurance and, moreover, does not apply if one of the owned vehicles gives rise to the accident. The idea that a policy holder could increase his non-owned vehicle coverage by adding owned vehicles to his policy is a concept this court cannot comprehend. The policy holder is already covered while driving all non-owned vehicles, regardless of the number of owned vehicles named in the policy, and pays no additional premium for non-owned vehicle coverage if an additional car is added to the policy. * * *"

We cannot follow this reasoning because of the reasons given to multiplying the coverage in the medical cases. 1. To us, the policy is ambiguous, and if the insurer had intended to limit its liability to $5,000, which a policy on one car would have provided, it should have so stated in no uncertain language. 2. A separate premium charge was made on the two cars as it relates to property damage liability and, with the clause that the terms of the policy shall apply separately to each, it would seem more logical to state that this is, in effect, two policies with the same company or the same as two policies with different companies. 3. Finally, it is impossible to relate the coverage to a particular automobile. True, the policy-holder is already covered while driving all non-owned vehicles, but when he pays an additional premium for an additional car added to his policy, he is at least paying for an additional amount of coverage. Therefore, we are of the opinion that Zellars is entitled to the additional property damage liability coverage.

■ We sustain the appellant's points relating to the independent ground of recovery of Zellars based on the theory of waiver. Likewise, we sustain the appellant's point relating to permitting Zellars to recover $1,500.00 attorney's fees incurred in prosecuting this suit for declaratory judgment relating to this type of insurance. Zellars concedes these matters, and the trial court's judgment in favor of Zellars will be reformed to eliminate the award of attorney's fees in the amount of $1,500.00.

■ Appellant's final points complain of the action of the trial court in granting the motion of Humble Pipe Line Company for an instructed verdict. The Allstate policy contains the usual provision that the insurance with respect to "a non-owned automobile shall be excess insurance over any other valid and collectible insurance". Humble Pipe Line Company was a self-insurer under the provisions of the Texas Safety Responsibility Law, Article 6701h, and had no insurance policy covering the truck's operations at the time of the collision. Allstate sought a declaration that, by virtue of the self-insurer's certificate and affidavit which the third party defendant had filed with the Texas Department of Public Safety, the primary obligation to pay any judgment against Zellars in favor of the Bama Company rested on Humble Pipe Line Company. Allstate has carefully analyzed the act in question and makes a very logical and appealing argument. However, we feel the matter has been foreclosed by Home Indemnity Company v. Humble Oil & Refining Co., 314 S.W.2d 861 (Tex. Civ.App., Dallas 1958, wr. ref., with comment by the Supreme Court, 159 Tex. 224, 317 S.W.2d 515). The facts in that case are obviously identical to the present dispute between appellant and Humble Pipe Line Company. Allstate's argument that the driver in the Home Indemnity case was making an unauthorized use of the vehicle seems to be incorrect; otherwise, the decision in the Home Indemnity case could not have arisen due to obvious defenses available to both the insurer and the

self-insured if it had been an unauthorized use situation. Without lengthening this opinion, we refer to the Home Indemnity case. The appellant's final points are overruled.

The trial court's judgment is therefore reformed only to the extent of eliminating therefrom the award of damages in favor of Zellars against Allstate in the amount of $1,500.00, with interest thereon, as attorney's fees for prosecuting the present suit. As so reformed, the judgment of the trial court is affirmed.