*189
 
 KERRIGAN, J.
 

 The plaintiffs are both members of the Socialist Labor Party and instituted this action in their individual capacities, and upon behalf of other members of the Party, for the purpose of enjoining the City of Anaheim and the City of Garden Grove from exacting the payment of a business license fee from members of the Party who distribute and sell the official newspaper of the Socialist Labor Party, known as the “Weekly People,” within the boundaries of the respective cities.
 

 The plaintiffs have been members of the Party for many years. Since 1960 the plaintiff Helen Long has been the highest official in that geographical arm of the Party functioning in southern California. The Party is the chief advocate in the United States of the political philosophy known as Socialism. It ordinarily nominates candidates for major national and state offices. The Party urges that the socialistic system be adopted as our form of government by peaceful means through the ballot box. It has never advocated violence to achieve its- political objective, and has been strongly critical of the communistic system of government.
 

 Since 1891 the Socialist Labor Party has published a newspaper disseminating its political and economic views. The paper is published in New York, is circulated nationwide, and is named the “Weekly People.” The newspaper is utilized to promote the candidacy of the nominee of the Party for national and state political offices as well as to promulgate the organization’s political philosophy.
 

 The Party is an unincorporated political association and owns and publishes the newspaper. Neither the paper, nor its publishing department, have separate entities apart from the political association. The Party employs persons to publish the paper and pays wages and salaries to all employees engaged in the publishing phase of operations. The paper carries no commercial advertising and has always operated at a loss. Its annual deficits are cured solely by fund-raising activities and the contributions of Party members. The paper carries only advertisements, announcements and notices of political activities, meetings and social events placed by subdivisions of the Party, from which advertisements it derives some revenue' which is utilized in the reduction of the annual deficit. Supplemental income is realized from the public sale of weekly editions at the rate of 5^ a copy, and further revenue -is derived from sale of the paper at “bundle” rates to suborgans of the Party. However, it should be emphasized that
 
 *190
 
 the limited revenue obtained by sale of the paper only reduces the annual deficit of the paper, and that the paper has continuously operated at a financial loss since its founding. The public sales of the paper are effected through the utilization of newsracks located in various communities throughout the United States at a fixed rate of 50 a copy.
 

 In 1959-1960 the paper was being distributed by means of sales from newsracks in the City of Anaheim. In November 1960 a citation was issued to a party member, Raymond Smith, who was in charge of distributing the paper in Anaheim. The citation charged Smith with violating the city ordinance dealing with the licensing of businesses, professions and trades in that he was selling and distributing the paper within the city limits without a business license. Neither Smith, nor any other party member, receives any compensation whatsoever for his services. Thereupon the plaintiff Helen Long contacted the city authorities and requested an exemption to the payment of the business license fee of $18 annually, but was unsuccessful in securing an exemption. Party members then continued to distribute the newspaper free of charge from the newsracks, and this gratuitous practice has been followed in Anaheim since 1961. In 1964 plaintiff Helen Long again presented a claim of exemption from payment of the city business license fee to the City of Anaheim, but the city council merely reaffirmed its prior decision by again refusing to grant the exemption.
 

 In 1962 the Party sold the “Weekly People” by the news-rack method for 50 a copy in the City of Garden Grove. Notification was received from the city authorities to the effect that the Party would have to obtain a license in compliance with the licensing ordinance of the City of Garden Grove. The members of the Party obtained a business license for a $25 annual fee in order to continue selling the paper, but in 1963 discontinued distribution and sale of the paper in Garden Grove following the expiration of the term of the license. Upon termination of distribution, the plaintiff Helen Long requested that the Party and its members be exempted from payment of the business license fee, but the officials of the City of Garden Grove also refused to allow the claim of exemption.
 

 The plaintiffs then filed this action for the purpose of enjoining each of the respondent-cities from requiring payment of a license fee.
 

 During the trial evidence was offered, but refused by the court, to the effect that the Christian Science Monitor was
 
 *191
 
 being sold in both cities from newsracks for 100 a copy without payment of a business license fee. The trial court further refused to entertain testimony that neither the Republican nor the Democratic political parties had ever been required to obtain a business license in order to distribute their political newspapers and leaflets in the respective cities.
 

 The trial court entered judgment in favor of the defendants and denied the plaintiffs' prayer that the defendant-cities be enjoined from effecting payment of the business license fees.
 

 The plaintiffs urge that the judgment be reversed on numerous grounds, but the cardinal issues may be defined as follows: (1) The ordinances of the respective cities have application only to commercial, profit-making businesses, and do not govern the activities of a nonprofit political newspaper; and (2) in the event the ordinances are construed so as to apply to a nonprofit newspaper, such ordinances are constitutionally invalid as being violative of the rights of freedom of the press and freedom of speech.
 

 The business license ordinance of the City of Anaheim provides,
 
 inter alia,
 
 as follows:
 

 "3.04.01C) Definitions ....
 

 "(b) Business. As used in this title, ‘business’ includes professions, trades, and occupations and all and every kind of calling whether or not carried on for profit. ’ ’
 

 "3.04.020 Revenue measure. This title is enacted solely to raise revenue for municipal purposes, and is not intended for regulation. ’ ’
 

 "3.b4.050 Newspapers—Periodicals. Every person conducting, managing or carrying on the business of operating or maintaining any news stand in or upon any public street, alley or other public place, for the sale of newspapers, periodicals or magazines, shall pay an annual license of $18 or, at the option of the licensee, a daily license of $2.”
 

 "3.04.130 Exemption—Charitable and nonprofit organizations. The provisions of this title shall not be deemed or construed to require the payment of a license tax to conduct, manage, or carry on any business, occupation, or activity from any institution or organization which is conducted, managed, or carried on wholly for the benefit of charitable purposes or from which profit is not derived, either directly or indirectly, by any individual;....”
 

 "3.04.250 Violations—Penalties. Any person violating any of the provisions of this title, punishment for which is not otherwise provided herein . . . shall be guilty of a misde
 
 *192
 
 meanor, and upon conviction thereof shall be punishable, by a fine of not more than $500 or'by imprisonment in tifié County Jail for a period of n.ot 'more than six (6) months, or by both Such fine and imprisonment.” (Anaheim Municipal Code, title III.)
 

 The Garden Grove Municipal Code, chapter 2—-Business License, provides in pertinent part: “Section 6210. Revenue Measure. This Chapter is enacted solely to raise revenue for municipal purposes and is not intended for regulation.”,
 

 “Section 6213. Definitions. For the purpose of this.'Qhajk' ter, unless it is evident from the context that a different meaning is intended, the following terms used herein are defined as follows: “(a) Business. As used in this chapter ‘business’ shall mean professions, trades and occupations and all and every kind of calling carried on for profit or lifelihood.” [sic]
 

 “Section 6240.34. Retail and Wholesale Sales and Miscellaneous: "For carrying on the business consisting of selling at retail or wholesale any goods, wares and merchandise or commodities, of conducting, maintaining or carrying on any trade, occupation, calling or business not otherwise specifically licensed by the ■ other subdivisions of this Chapter,1 the annual license tax shall be computed as follows: $25.00 plus $4.00 per annum for each employee for the first four employees in excess of one, plus $2.00 per annum for each of the next twenty employees, plus $1.00 for each employee in excess of twenty-five. ’ ’
 

 “Section 6220.27. Penalty for Violation. Any person violating any of the provisions of this Chapter . . . shall be deemed guilty of a misdemeanor. ’ ’
 

 Initially, the plaintiffs maintain that the designated ordinances exempt nonprofit, noncommercial activities such ' as are involved in the sale and distribution of the “Weekly People” from the payment of the prescribed fees. The trial court found that the sale of the paper at 5^ a copy from a newsrack in each of the cities constituted a commercial, profit-making, compensatory activity. The court further found that the newspaper had incurred a deficit during each and all the years of its existence.
 

 In interpreting an ordinance, the fundamental question is the scope of the statute involved.
 
 (Varcoe v. Alameda Lodge No. 1015, B. & P.O.E.,
 
 174 Cal. 549, 552 [163 P. 909].) In construing a license tax law the. courts ordinarily look to the substance and purpose of the statute rather 'than to its form and language.
 
 (Ex parte Whitwell,
 
 98 Cal. 73, 79 [32
 
 *193
 
 P. 870, 35 Am.St.Rep. 152, 19 L.R.A. 727];
 
 Cuzner
 
 v.
 
 California Club,
 
 155 Cal. 303, 309. [100 P. 868, 20 L.R.A. N.S. 1095]; 31 Cal.Jur.2d 99-100.) The term “business’’ as used, in a law imposing, a license tax on- businesses, trades, professions and callings, ordinarily means a business in-the trade or commercial sense, one carried on with a view to, profit or livelihood.
 
 (Cuzner
 
 v.
 
 California Club, supra,
 
 p. 311.) In statutes relating to license taxes, the word “business” means that which occupies the time, attention and labor of men for purposes of livelihood or for profit.
 
 (City of Los Angeles
 
 v.
 
 Cohen,
 
 124 Cal.App.2d 225, 228 [268 P.2d 183]
 
 Matter of Application of Smith,
 
 33 Cal.App. 161, 163 [164 P. 618].)
 
 Business
 
 in its broad sense embraces every-, thing about .which one can be employed; the word is often,, synonymous with calling, occupation, or trade engaged in, for the purpose of obtaining a livelihood or profit or. gain..
 
 (Mansfield
 
 v.
 
 Hyde,
 
 112 Cal.App.2d 133, 137 [245 P.2d 577].) “ ‘-Business’, is defined to be that which occupies the time, attention and labor of men for the purpose of livelihood or. profit . . . [citations]. An occupation or employment will not be excluded from the classification of business merely because it actually results in loss instead of profit; but it is essential that livelihood or profit be at least one of the purposes for which the employment is pursued, in order to bring it within the -accepted definition of t)je word . . . .”
 
 (Deering
 
 v.
 
 Blair,
 
 23 F.2d 975, 976 [57 App.D.C. 367].)
 

 The Anaheim ordinance under, review clearly defines the types and kinds of businesses which are subject to payment of a business license fee, and is commendable for its clarity with respect to exempting nonprofit organizations from payment of the license tax. Although the Anaheim ordinance exempts those organizations and activities “from which profit is not derived,” it may.be readily inferred that the intent of the section is to exclude those organizations and activities conducted or carried on for other than- a profit motive,- and not to exempt only those persons and firms which did not, in fact, make a profit.
 

 The Garden Grove ordinance does not contain an express exemption provision. It states, in essence, that a license fee shall be payable by a business. “Business” is defined as those “professions, trades, and occupations, and all and every kind of ■ calling carried on for profit of lifelihood [sic]. ’ ’ This statutory definition of the term “business” in a law .imposing a license tax on a business, profession or calling harmonizes
 
 *194
 
 perfectly with the judicial definition of the word, to wit, in the trade or commercial sense, one carried on with a view to profit or livelihood.
 
 (Cuzner
 
 v.
 
 California Club, supra,
 
 155 Cal. 303, 311; see Corp. Code, § 21000.)
 

 Thus, the issue to be determined herein with respect to the interpretation of both ordinances is whether the Socialist Labor Party, in the publication of its paper, is engaged in business in the commercial or trade sense.
 

 The evidence clearly demonstrates that the sale of the “Weekly People” at a nominal charge of 5(2 a copy, has had the effect of reducing the operating deficit of the paper inasmuch as the publication has incurred a deficit during each and all of the years since it was founded. “. . . [T]he mere fact that religious literature is ‘sold’ by itinerant preachers rather than ‘ donated ’ does not transform evangelism into a commercial enterprise ... It should be remembered that the pamphlets of Thomas Paine were not distributed free of charge . . . Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to those who can pay their way . . . .”
 
 (Muddock
 
 v.
 
 Commonwealth of Pennsylvania,
 
 319 U.S. 105, 111 [87 L.Ed. 1292, 3297, 63 S.Ct. 870, 874, 146 A.L.R. 81].)
 

 Thus, the fact that the “Weekly People” is “sold” for a nominal charge is not controlling. While the sales price charged for the paper might well be a factor to consider in determining whether the Party is entitled to an exemption under the statutes involved, such a criteria would not appear to be the paramount consideration. In determining whether an activity is commercial or noncommercial in nature, the
 
 purpose
 
 or object of the activity would definitely appear to constitute a worthier standard or test for resolving the issue. The object of the organization or association should be scrutinized for determining whether such organization or association is engaged in busniess in the ordinary trade or commercial sense. (See
 
 Cuzner
 
 v.
 
 California Club, supra,
 
 155 Cal. 303, 309.) In
 
 Cuzner,
 
 a social club was held not to have been doing business within the meaning of a license tax ordinance by selling, at above cost, alcoholic beverages to the members of the club. Moreover, it has been held that the mere sale of a publication, which publication is designed solely for the dissemination of religious ideas, does not convert the activity into a commercial one. (See
 
 Follett
 
 v.
 
 McCormick,
 
 321 U.S. 573 [88 L.Ed. 938, 64 S.Ct. 717. 152 A.L.R. 317].) In the case under review there is credible evidence in the record before us indicating that the primary function of the
 
 *195
 
 “Weekly People” is to present the views of the Socialist Party to the paper’s subscribers and not to realize a pecuniary profit. While the case authorities involving the imposition of a license tax have been primarily devoted to distributors of religious writings, the right to disseminate political views should be entitled to as much protection as the right to propound religious doctrines.
 

 Foreign jurisdictions have ruled that religious and labor activities analogous to those involved herein do not fall within the purview of the ordinances requiring a.business license. (See
 
 State
 
 ex rel.
 
 Semansky
 
 v.
 
 Stark,
 
 196 La. 307 [199 So. 129] ;
 
 People
 
 v.
 
 Finkelstein,
 
 170 Misc. 188 [9 N.Y.S. 2d 941] ;
 
 Cincinnati
 
 v.
 
 Mosier,
 
 61 Ohio App. 81 [22 N.E.2d 418].) Similarly, the California Supreme Court has held an ordinance unconstitutional which required a license fee to be paid by a labor union business representative who was paid for soliciting members for union purposes.
 
 (In re Porterfield,
 
 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675].)
 

 The respondents’ reliance on the case authority of
 
 City of Corona
 
 v.
 
 Corona Daily Independent,
 
 115 Cal.App.2d 382 [252 P.2d 56], upholding the right of a city to impose a nondiscriminatory license tax on a commercial paper is not persuasive. There is an obvious difference between taxing a
 
 commercial
 
 profit-making venture as distinguished from a
 
 nonprofit, noncommercial
 
 organization. (See
 
 Follett
 
 v.
 
 McCormick, supra,
 
 321 U.S. 573, 579 [88 L.Ed. 938, 942, 64 S.Ct. 717. 152 A.L.R. 317].)
 

 It seems eminently fair to conclude that the “Weekly People” is a noncommercial, nonprofit, purely political publication, and that under any reasonable interpretation of the Anaheim and Garden Grove ordinances, the publication, and the officials and members of the Socialist Party who distribute the same, are exempt from the payment of a business license fee.
 

 Our construction of the respective ordinances exempting the Socialist Labor Party’s publication from payment of a license tax is further fortified by the knowledge that to render these statutes a contrary interpretation could culminate in a decision determining that the ordinances are unconstitutional with respect to nonprofit, noncommercial political activity. A fundamental canon of statutory interpretation requires that a statute be construed to avoid unconstitutionality if it can reasonably be so interpreted.
 
 (In re Klor,
 
 64 Cal.2d 816. 821 [51 Cal.Rptr. 903. 415 P.2d 791];
 

 
 *196
 

 Geiger
 
 v.
 
 Board of Supervisors,
 
 48 Cal.2d 832, 839 [313 P.2d 545];
 
 Busch
 
 v.
 
 Turner,
 
 26 Cal.2d 817, 820 [161 P.2d 456, 171 A.L.R. 1063] ;
 
 Collins
 
 v.
 
 Riley,
 
 24 Cal.2d 912, 915 [152 P.2d 169].) Licensing ordinances should likewise be so construed. (See
 
 People
 
 v.
 
 Finkelstein, supra,
 
 170 Misc. 188 [9 N.Y.S.2d 941];
 
 Thomas
 
 v.
 
 City of Atlanta,
 
 59 Ga.App. 520 [1 S.E.2d 598];
 
 Cincinnati
 
 v.
 
 Mosier, supra,
 
 61 Ohio App. 81 [22 N.E.2d 413];
 
 State
 
 ex rel.
 
 Hough
 
 v.
 
 Woodruff,
 
 147 Fla. 299 [2 So.2d 577].) It has frequently been held that the freedoms of speecli and of the press secured by the First Amendment against federal abridgement are similarly secured by the Fourteenth Amendment against abridgement by the state.
 
 (Gitlow
 
 v.
 
 New York,
 
 268 U.S. 652, 666 [69 L.Ed. 1138, 45 S.Ct. 625, 630] ;
 
 Whitney
 
 v.
 
 California,
 
 274 U.S. 357 [71 L.Ed. 1095, 47 S.Ct. 641] ;
 
 Near
 
 v.
 
 Minnesota,
 
 238 U.S. 697 [75 L.Ed. 1357, 51 S.Ct. 625] ;
 
 Stromberg
 
 v.
 
 California,
 
 283 U.S. 359 [75 L.Ed. 1117, 51 S.Ct. 532, 73 A.L.R. 1484] ;
 
 Cantwell
 
 v.
 
 Connecticut,
 
 310 U.S. 296 [84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352].) Freedom of speech and freedom of the press have been characterized as fundamental personal rights and liberties.
 
 (Schneider
 
 v.
 
 New Jersey,
 
 308 U.S. 147, 161 [84 L.Ed. 155, 164, 60 S.Ct. 146, 150];
 
 DeJonge
 
 v.
 
 Oregon,
 
 299 U.S. 353, 364 [81 L.Ed. 278, 283. 57 S.Ct. 255, 260] ;
 
 Lovell
 
 v.
 
 City of Griffin,
 
 303 U.S. 444, 450 [82 L.Ed. 949, 952, 58 S.Ct. 666, 668].) “Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion.”
 
 (Schneider
 
 v.
 
 New Jersey, supra,
 
 at p. 160, 84 L.Ed. at p. 164.) “If the guarantees of freedom of speech and freedom of the press are to be preserved, municipalities should not be free to raise general revenue by taxes on the circulation of information and opinion in non-commercial causes . . . .”
 
 (Jones
 
 v.
 
 City of Opelika,
 
 319 U.S. 103 [87 L.Ed. 1290, 63 S.Ct. 890], wherein the U.S. Supreme Court adopted the dissenting opinion in
 
 Jones
 
 v.
 
 City of Opelika,
 
 316 U.S. 584, 620, 621 [86 L.Ed. 1691, 1714, 62 S.Ct. 1231, 1250, 141 A.L.R. 514].) Any person is exempt from taxation upon any act of distributing information or opinion of any kind, whether
 
 political,
 
 scientific, or religious in character, when done solely in an effort to spread knowledge and ideas, with no thought of commercial gain.
 
 (Jones
 
 v.
 
 City of Opelika, su
 
 pra.)
 

 The cities urge the constitutionality of their respec
 
 *197
 
 tive revenue measures in that the ordinances apply equally to all persons and are therefore nondiscriminatory. “The fact that the ordinance is ‘ nondiscriminatory' is immaterial. The protection afforded by the First Amendment is not so restricted. A license tax certainly does not require constitutional validity because it classifies the privileges protected by the First Amendment along with the wares and merchandise of hucksters and peddlers and treats them all alike. Such equality of treatment does not save the ordinance.”
 
 (Murdock
 
 v.
 
 Commonwealth of Pennsylvania, supra,
 
 319 U.S. 105, 115 [87 L.Ed. 1292, 1299, 63 S.Ct. 870, 876].)
 

 The judgment is reversed with directions to the trial court to issue a permanent injunction restraining the respondent City of Anaheim, its representatives, officers, agents, and employees, and the respondent City of Garden Grove, its representatives, officers, agents, and employees, from requiring plaintiffs to secure and pay for a city business license under their existing ordinances as a condition for the distribution and sale of the Socialist Labor Party publication known as the “Weekly People” in the respective cities, and further enjoining each of the respondents from interfering with the distribution of the newspaper publication “Weekly People” within the boundaries of the respective cities.
 

 McCabe, P. J., and Thompson (Raymond), J. pro tern.,
 
 *
 
 concurred.
 

 *
 

 Assigned by the Chairman of the Judicial Council.